————o————

JOHN P. WILLIAMS, ADM'R OF WILLIAM D. PETTICREW, Respondent, *vs.* THE HEIRS OF WILLIAM PETTICREW, Appellants.

1. *Administration—Annual settlements—Final settlements—Division of estate— Compromise.*—On appeal from a final settlement of an administrator mistakes in annual settlements can be corrected, and the fact, that the heirs compromised a suit as to the validity of the will on the belief that such annual statement was correct, cannot influence the action of the court. They might with other circumstances, have some weight to set aside the compromise.

Williams, Adm'r, v. The Heirs of Petticrew.

2. *Administration—Final settlements—When to be assailed.*—Final settlements of administrators, curators, etc., must be seasonably and directly assailed in order to avoid their effect as judgments importing absolute verity.

3. *Administration—Final settlement—Estates of father and son.*—In a suit on the final settlement of A's estate, items allowed in the final settlement of the estate of B., father of A., by the same executor cannot be assailed, not being a matter before the court.

4. *Administration—Final settlement—Items questioned.*—In a suit on the final settlement of an administrator concerning certain charges it was *held :*

(a.) Where an administrator inventoried certain slaves, which were emancipated while in his hands, that he was not chargeable therefor.

(b.) Where the administrator under a power of attorney borrowed money for a trip for the deceased, that an itemized account of expenses, together with the balance in his hands should be filed; otherwise the claim should be disallowed.

(c.) Where the administrator in good faith and under advice of counsel took a trip to look after the estate, his claim should be allowed ; where sufficient testimony, explanatory of such claim is not offered, the claim should be disallowed.

(d.) A claim for money paid as a penalty on taxes should be disallowed, when such penalty accrued by the administrator's neglect.

(e.) The time to obtain credit for worthless notes is at the final settlement, and the fact, that the administrator carried such notes on his annual settlements with no mention of their worthlessness, is not conclusive upon him, and the question, whether he exercised due diligence in collecting them, is a matter of fact to be determined by evidence.

(f.) If when the administrator receives a note, the makers thereof are solvent, but afterwards become insolvent, the burden of proof is on him to prove, that with due diligence he could not have collected it; and in the absence of such proof, the claim should be disallowed.

5. *Administration—Final settlements—Notes—Money—Interest, when chargeable.*—On notes in his hands bearing 10 and 6 per cent. interest, the administrator should be charged respectively such interest; on money in his hands legally accounted for, he should be charged such interest as he actually received when invested under the orders of the court; when such orders, if any, were departed from, then with such interest as he might have received if they had been complied with ; on money in his hands not reported according to law, but used by him, he should be charged ten per cent. interest computed with annual rests; on notes properly returned as insolvent, he shall be credited with the principal and the same rate of interest with which he was charged thereon.

### Appeal from Chariton Circuit Court.

*A. S. Harris, with T. W. B. Crews,* for Appellants, cited Williams Ex., 1567; Fish vs. Miller, Hoffm., Ch., 273; Wagn.

Stat., 875, § 26; Powell vs. Owens, 5 Ves., 839; Carter vs. Feland, 17 Mo.. 383; Johnson's adm'r vs. Hedrich, 33 Ind., 129; Garvin vs. Williams, 44 Mo., 465; S. C., 50 Id., 206; Witherspoon vs. McCalla, Wagner, 245; Powell vs. Evans, 5 Ves., 839; Case vs. Abeel, 1 Paige, 393; Piety vs. Stace, 4 Ves., 621; Hook vs. Payne, 14 Wall., 255; 1 John. Chan., 121; 1 Hilliard's Abr., 227–8; *In re* Van Horne, 7 Paige, 46; Waller vs. Amsted, 2 Leigh, 11; McCall vs. Peachy's Adm'r., 3 Munf., 288; Schiefflin vs. Stewart, 1 John. Ch., 620; 1 Amer. Lead. Ca., 523; Flintham's Appeal, 11 Serg. & Rawle, 16; Prewett vs. Prewett, 4 Bibb, 266; Darrell vs. Edw., 3 Dessaus, 241; Wagn. Stat., 90, §§ 55, 56 & 57; Id., 87, § 26; Id., 89, § 48; Id. 107, § 2; Hook vs. Payne, 14 Wall., 255, and cases cited; Toller's Ex., 480–1; Ashburnham vs. Thompson, 15 Ves., 402; 1 Bin., 199; 4 Serg. & Rawle, 116; 4 Hen. & Munf., 416; 4 John. Chan., Rep., 405; Fonblanque's Eq., 442.

*Glover & Shepley*, for Respondent.

I. David Petticrew bequeathed his property to his son, and Williams was his guardian. Williams took his ward into his house while an infant, and kept him tell he was of age and after. Immediately after the ward was of age, he being in a dying condition, Williams had a settlement with him and took his receipt. This settlement was invalid. (Revett vs. Harvey, 1 Sim. and Stu., 502; Mellish vs. Mellish, Id., 138; Garvin vs. Williams, 44 Mo., 465; S. C., 50 Mo., 206.)

II. It was a breach of trust to let a note, without real estate security, stand out. (Bentley vs. Shreeve, 2 Md. Ch., 215; Moore vs. Hamilton, 4 Fla., 112; Ruggles vs. Sherman, 14 I. R., 446; Shultz vs. Pulver, 11 Wend., 361; 2 Williams, Ex., 1539.)

III. If the administrator loaned the trust money without real estate security, he became liable therefor. (Powell vs. Evans, 5 Ves., 839; Gray vs. Fox, 1 Saxton, 259; Hemphill's Ap., 18 Pa. St., 303; 23 Pa. St., 44; Ackerman vs. Emott, 4 Barb., 626; Bogert vs. Vanvelsor, 4 Edw. 718.)

Williams, Adm'r, v. The Heirs of Petticrew.

IV. If the administrator used the money of the estate himself and turned over this note instead, he made himself responsible for principal and interest. (Jacott vs. Emmett, 11 Paige, 142 ; Jenkins vs. Walter, 8 Gill and I. 218 ; Stantley's Ap., 8 Barr, 431 ; Morris vs. Wallace, 3 Barr, 323.) The administrator was bound to report money in his hands to the court and obtain its instructions. (Wagn. Stat,, 90.) He has no right to keep it dead in his hands. (2 Williams Ex., 1541.) Where there is so much confusion and so much neglect, the only safe rule is to make him account for ten per cent. compounded annually. (Hook vs. Payne, 14 Wall., 255 ; Spear vs. Tenkhorn, 2 Barb. Ch., 211 ; Clements vs. Caldwell, 7 B. Mon., 171 ; Swindall vs. Swindall, 8 Iredell Ch., 286 ; Moore vs. Beauchamp, 5 Dana, 77 ; Utica Ins. Co. vs. Lynch, 11 Paige, 520 ; Jameson vs. Hapgood, 10 Pick., 104 ; Barney vs. Saunders, 16 How., 535.)

V. The administrator is liable for a note, where no diligence is shown, no request to pay, and there was no proof of insolvency. (Wagn. Stat., 110, § 18 ; Williams Ex., 1536.)

VI. No probate court is authorized to lump a claim. It should be rejected, if not itemized. (Oldham vs. Trimble, 35 Mo., 229–230.)

VII. The account with the administrator should have been stated on the basis of ten per cent. with annual rests, in respect to every claim and use of money as to which he committed a breach of trust. (Wagn. Stat., 90, § 54.)

*Thos. Shackelford, with C. A. Winslow*, for Respondent.

I. On his final settlement, the administrator is entitled to credit for all debts due the estate, which have been charged in the inventory and have become insolvent, or which from any other cause he could not collect by the use of due diligence. (Wagn. Stat., 110, § 18 ; Strong vs. Wilkson, 14 Mo., 116.) His liability is like that of a bailee for him, and the measure of the diligence required of him is only that which prudent men exercise in the direction of their own affairs. (State vs. Maglen, 44 Mo., 356 ; Fudge vs. Dean, 51 Mo., 264 ; Gamble vs. Gibson, 59 Mo., 585.)

II. The administrator was bound to exercise reasonable diligence in collecting and preserving the estate, and his trip to Virginia under the circumstances was not an unreasonable undertaking. He was advised to go by his attorney and acted prudently in doing so. (Wagn. Stat., 84, § 184.)

III. A discretion is vested in trial courts as to charging an administrator with interest, and this court will not interfere, unless there has been an unreasonable exercise of this discretion. (Wagn. Stat., 90, §§ 54, 55 ; Madden vs. Madden, 27 Mo., 544 ; Clyce vs. Anderson, 49 Mo., 37.)

HOUGH, Judge, delivered the opinion of the court.

Dr. David Petticrew died in 1847, leaving a will, by which he devised and bequeathed to his only child, William D. Petticrew, his entire estate. John P. Williams was appointed and qualified as executor of said will, and qualified also as testamentary guardian of the person and curator of the estate of said W. D. Petticrew. On the 12th day of September, 1860, W. D. Petticrew became of age. On the 13th or 14th day of the same month, Williams made a final settlement of his accounts as executor, guardian and curator. On the day after the settl'ement W. D. Petticrew made a will, giving therein a large portion of his estate to his guardian, Williams, and to Williams' children.

In November, 1860, Petticrew died, and in January, 1861, Williams was appointed administrator of his estate with the will annexed. In April, 1863, proceedings were instituted by the heirs at law of Petticrew to contest the validity of his will, and said proceedings were twice reviewed by this court, without any final determination of the cause (44 Mo., 465 and 50 Mo., 206.) In November, 1872, said proceedings being still pending, a compromise was effected between the heirs at law, and the claimants under the will, whereby they agreed to make an equal division between them of the property of the estate, and the further contest of the will was abandoned. Under the arrangement, it is stated, the real property has been divided. One of the stipulations of the compromise was as

follows : "Fifthly. The said parties of the second part (claimants under the will), in consideration of the premises, and the further consideration of five dollars to them paid by the parties of the first part (heirs at law), the receipt of which is hereby acknowledged, covenant and agree with the parties of the first part, that they, the said parties of the second part, will fully account for and pay over and cause to be paid over to the said parties of the first part, their heirs and assigns, the equal half of the present estate, money, goods, chattels, rights, credits, rents and effects above conveyed to them, with interest accruing, if any, for which an account shall lawfully be rendered by the proper party or parties. The said account to be taken and rendered, and the said one-half to be paid over to the parties of the first part, to be enjoyed according to their respective interests as heirs at law and distributees of said William D. Petticrew, deceased, in the same manner, and with like effect, as if said William D. Petticrew had died intestate, or his alleged will had been set aside and annulled. The aggregate amount of the said one-half of the said personal estate shall be ascertained amicably by the counsel of the respective parties upon an investigation of the value of said estates of David Petticrew and William D. Petticrew, lawfully to be accounted for ; and the parties of the first and second part agree with each other to facilitate such investigation, by placing promptly in the hands of said counsels all books, papers, accounts, documents and information in their possession, when called for, and the amount when so ascertained shall be promptly paid over, or secured to the satisfaction of the parties of the first part, and if said amount to be so accounted for and paid over cannot be amicably agreed upon, the same may be adjusted by suit or suits in the courts."

On the 5th day of August, 1863, Williams, as administrator, filed an exhibit of the estate of William D. Petticrew, showing the aggregate amount of notes, judgments and cash on hand to be $28,361.54. Accompanying the statement was a list of notes returned as insolvent in his settlement

made in 1860, and a schedule of all the real estate and other property belonging to the estate. A second statement, or settlement, was made July 11th, 1867, showing a balance on hand of $30,569.45. A third settlement was made on the 15th of April, 1868, showing a balance on hand of $29,872.-56. On the 16th December, 1869, a fourth settlement was made, showing a balance on hand of $28,866.13.

After the compromise was entered into, Williams filed an exhibit and statement as and for a final settlement of the estate of W. D. Petticrew, which showed a balance on hand to December, 1872, of $16,544.13, he having claimed credit for a number of notes as worthless, and uncollectable, with which he stood charged in his previous settlements.

On the 27th day of August, 1873, this final settlement, together with the objections thereto filed by the heirs at law of W. D. Petticrew, were submitted to the Judge of the probate court of Chariton county, who took the case under advisement, and on the 14th day of October, 1873, he rendered judgment charging the administrator with the sum of $56,175.54, and ordered distribution thereof.

From this judgment the administrator appealed to the circuit court, where on the 27th day of November, 1873, upon a trial *de novo*, the administrator was charged with the sum of $19,918.92, and judgment was entered accordingly, and distribution was ordered according to the respective rights of the parties, as settled and determined by the agreement of compromise. From that judgment the heirs have appealed to this court.

In November, 1861, all the records and papers in the county clerk's office of Chariton county, including the settlements of John P. Williams, as executor of David Petticrew, and as guardian and curator of W. D. Petticrew, were destroyed by fire. These settlements, therefore, could not be introduced in evidence to show what money, notes, accounts, and other property constituted the estate of Wm. D. Petticrew at the time those settlements were made. Whether any annual settlements were made by Williams, prior to

1863, does not appear. The statement of August, 1863, was made in consequence of the loss of the probate records, and was intended to be a complete exhibit of the condition of W. D. Petticrew's estate; and on this and on the annual settlements subsequently made, the appellants here assert that they based their compromise with the administrator and other claimants under the will, and they therefore insist that to allow any correction or change in such settlements, as will diminish the administrator's liability to any extent, will operate as a fraud on them.

In a proceeding to rescind or set aside the agreement of compromise, such an argument might, in connection with other circumstances, have some weight ; but it is utterly without force on an appeal from the final settlement.

In making his final settlement after the compromise, the administrator had precisely the same rights he would have had if no such agreement had been made; and in view of the allusion by counsel to certain circumstances, which they claim affected the validity of the settlements made in 1860, soon after W. D. Petticrew attained his majority, it may be proper to remark, that neither the probate nor the circuit court had any concern with these settlements in adjusting the final settlement now under review, further than to ascertain, as far as was pertinent, what those settlements were. The present proceeding does not involve the legality or good faith of any allowances then made. Such settlements must be seasonably and directly assailed, in order to avoid their effect as judgments importing absolute verity.

This case was tried in the circuit court, on exceptions filed in the probate court, and our inquiries must be confined to the matters there decided. The administrator, Williams, must be held to bear precisely the same relation to the property which came to his hands as administrator of William D. Petticrew, which he would sustain, if another, than himself, had been executor of David Petticrew, and guardian of William D. Petticrew, and made the final settlements in 1860. His duty as to the collection of the notes and accounts,

and the preservation of the entire estate of William D. Petticrew, his liability for interest, and his right to receive credit for insolvent notes, are just the same as they would be, if he had never had any connection with the settlements made in 1860. The credits allowed to Williams in his final settlement of David Petticrew's estate for notes on insolvent persons, returned by him as uncollectable, which allowances were objected to by the appellants, cannot be examined here. That settlement is not before us. When these notes again came to Williams' hands as administrator in 1861, some of them were barred and others were uncollectable, and we think the credits allowed him on account thereof were justified by the evidence.

Objections were made to a number of vouchers in the probate and circuit courts which have been abandoned here. The examination of the manuscript record of two hundred pages, now before us, has been no easy task. It is not very orderly in its arrangement and we have received very slight assistance from the briefs of counsel, for want of proper references to those portions of the record where the matters relied upon are to be found.

The following credits allowed to the administrator by the circuit court, against the objections of appellants, are still objected to.

In the settlement made in 1863, a note to Thos. Lowry, dated Nov. 8th, 1860, for $735, due ten months after date, bearing interest at ten per cent. signed Wm. D. Petticrew, per John P. Williams.

A bond to B. F. Wood, dated Nov. 28th, 1860, for $600, due one day after date with interest at ten per cent., signed W. D. Petticrew, by John P. Williams, agent.

A note from Mrs. Lyford for $200, dated September 22, 1860, payable January, 1862, to William D. Petticrew.

Expenses of a trip to Virginia to look after the interest of Petticrew in some estate there, $175.

Account of J. R. Hyde & Co., $115,40.

In the settlement made in 1869, an allowance of $100 for services in looking after the lands of the estate.

In the settlement made in 1869, an allowance of $271.70, over and above taxes proper, paid as penalty and costs to redeem lands of the estate sold for taxes.

In the final settlement, credit for the note of James A. Clark for $269.52, due May 23, 1856, bearing ten per cent.; and a note of John W. and James S. Gilliam, for $5,684.81, due July, 26th, 1860, with ten per cent. interest.

Objections were also made to an allowance for taxes paid after the final settlement was filed, for the years 1872 and 3. These taxes were a lien on the estate before any division under the compromise, and we can see no objection to the allowance.

An attempt was made to show the value of the slaves inventoried by the administrator and emancipated while in his possession, with a view of charging him with the amount. The circuit court very properly refused to hear any testimony on the subject.

The notes to Wood and Lowry were for money, borrowed by Williams under a general authority by power of attorney from Wm. D. Petticrew, to defray the expenses of a trip to the south, advised by the physicians of Petticrew to be taken for the benefit of his health, and during which trip he died. An itemized account of the expenses of that trip should have been required of the administrator together with an account of the balance in his hands, otherwise these credits should not have been allowed.

The expenses attending the trip to Virginia to look after the interests of the estate constituted a proper credit to the administrator. It seems to have been undertaken by the advice of counsel and in good faith. The fact, that the administrator was himself interested as legatee, does not detract from the merit of the claim. Other persons were likewise interested in the estate under the will.

We see no objection to the credit allowed for the note of Mrs. Lyford. This note was taken by Petticrew himself after the statement in 1860. She was insolvent at the time and continued so until her death, and the note was probated against her estate, but nothing was ever realized.

No objection is urged in this court to the account of Hyde & Co.

We cannot say from the testimony before us, whether the allowance for looking after the lands of the estate was proper or not. In the absence of sufficient testimony, the exception must be sustained. The sum allowed for the redemption of lands in Livingston county, in excess of the original taxes, should not have been credited to the administrator. It was through his neglect that it became necessary to pay the sum, and he should be required to bear the loss himself.

The fact that the notes of James A. Clark and John M. and Jas. S. Gilliam were returned by the administrator as part of the assets of the estate in all his settlements from 1861 to his final settlement, without any mention of the insolvency of the makers, is not conclusive evidence, that they could have been collected by him by the exercise of due diligence. By the provisions of our administration law, neither inventories nor appraisements are conclusive for or against an administrator, nor are annual settlements. Besides the time, fixed by the statute for obtaining credit for insolvent notes, is at the final settlement. And the appellants could not complain, even in a proceeding where they might be properly heard on that subject, of having been deceived solely by the annual settlements of the administrator into making the compromise they did, as they were bound to take notice of the law and the rights of the administrator thereunder. The question, therefore, is one of fact, as to whether it was possible for the administrator by the exercise of due diligence to have collected these notes at any time after he entered upon the administration of W. D. Petticrew's estate in January, 1861. For any failure or default in that regard, prior to that time, he is not accountable in the present proceeding.

In regard to the Clark note, the testimony is conclusive, that from the time this note came to the hands of Williams, as administrator, in 1861, Clark was and continued to be insolvent. We have no doubt about the propriety of allowing the administrator credit for this note.

In regard to the Gilliam note, there is more doubt. When this note was turned over to W. D. Petticrew after the settlement in 1860, the makers were undoubtedly solvent. This note again came to the hands of Williams, as administrator, in January, 1861. In March or April, 1861, John and James Gilliam suddenly became insolvent, and since that time it has been impossible to collect the note. In March, 1861, Williams secured, by a land trade, a debt due to the estate, together with one due to himself, from James S. Gilliam, who was surety for John Gilliam. on the note for $5,684.81. James Gilliam testified, that he owed the Petticrew estate about $2.000, and Williams about $1,000, and that he sold his land to Williams for $4,000 and received from him $1,000 in cash. Williams had several interviews with him about the note of John Gilliam, on which he was surety, but he refused to pay it. After that time it could not have been made out of him by law. There was some testimony, that Williams went to John Gilliam's house at night together with one Sportsman, and perhaps an officer, to have him secure a debt due to himself and Sportsman, but the date of this occurrence was not given, and what was done, does not clearly appear. It is difficult to determine from the testimony now before us, whether Williams should have been credited with this note. From the time he became administrator, until the insolvency of the Gilliams, he must undoubtedly have felt a personal interest, as a legatee under Petticrew's will, in the collection of this debt; but we cannot say that he exercised that diligence which the law exacted of him as administrator. Neither can we say, that it appears from the evidence that by the exercise of any degree of diligence, the debt could have been collected. But as the burden of proof was on the administrator to establish his right to credit for this note, he should at least have made it appear, that even by the exercise of a proper degree of diligence it would have been impossible to collect it. On the testimony adduced, the exceptions of the heirs should have been sustained. As the case must go back for a statement of the administrator's account

in accordance with this opinion, this matter may be made plainer by further testimony.

On the note for $12,521.00, given by Williams to W. D. Petticrew on the final settlement had with him September, 13th, 1860, the circuit court only charged him with ten per cent. simple interest. When Williams entered upon this administration of Petticrew's estate in January, 1861, the debt represented by this note became assets in his hands. It appears from the record, that he did not report the proceeds of this note to the court as required by the statute, but on the contrary mingled this money with his own and used it for his own benefit in his own affairs, and that he neither did nor could render any separate account thereof. Under such circumstances we think the probate court did right in charging him with compound interest, and the circuit court erred in charging him with simple interest only.

On the notes in his hands bearing ten per cent. interest the administrator should be charged with ten per cent. On claims bearing 6 per cent. he should be charged the same rate. On money in his hands legally accounted for, he should be charged such interest as he actually received when invested under the orders of the court; and when such orders, if any, were departed from, then with such interest as he might have received if they had been complied with.

On money in his hands not reported according to law, but used by himself, he should be charged with ten per cent. interest, computed with annual rests. As to the notes which we have indicated were, in our opinion, properly returned as insolvent, he should be credited with the principal thereof, and the same rate of interest with which he was charged on said notes up to his final settlement. The rule laid down in Gamble vs. Gibson (59 Mo., 585) can be applied to the transaction in gold.

The judgment of the circuit court will be reversed, and the cause remanded. Judges Napton, Vories and Sherwood concur; Judge Wagner absent.