THE STATE *ex rel.* ZIEGENHEIN, *Collector, Appellant,* v. TITTMANN, *Public Administrator.*

1.   **Taxes Due from Estate of Decedent:** DUTY OF ADMINISTRATOR TO PAY : DEMAND, ALLOWANCE OF.   Taxes on the personal estate of a decedent, whether they accrue before or after his death, are demands within the meaning of Revised Statutes, 1879, chapter 1, article 9, which it is the duty of the administrator to pay without presentation for allowance, but which, if he fails to pay, ought to be allowed by the court having jurisdiction.

2.   —— : ——.   Taxes accruing on the personal estate after the death of a decedent, being demands against the estate within the meaning of the administration law, may be established as such either by the probate or circuit court.

3.   —— : —— : PRACTICE.   The collector of the city of St. Louis may properly maintain a proceeding in a court of record, in the name of the state, at his relation and to his use, under Revised Statutes, 1879, section 191, to have established as a demand against the estate of a decedent city and school taxes that have accrued on the personal estate while in charge of an administrator.

The State ex rel. Ziegenhein v. Tittmann.

4.    ——— : ——— : ———. The part of the petition in such case,
asking that the taxes be declared a lien on the personal estate in
the hands of the administrator, may be rejected as surplusage and
the proceeding be considered simply as one to establish a demand
under the statute.

5.    Taxes : PRACTICE : PLEADING. A petition, in a proceeding to
establish as a demand against the estate of a decedent taxes that
have accrued on personalty in the hands of the administrator,
should set out the taxes of each year for which they are due in
separate counts.

6.    ——— : ——— : ———. Where the taxes due for several years
are set out in one count, the petition is not for that reason demur-
rable, but the defendant's remedy is by motion to require plaintiff
to elect upon which cause of action he will go to trial.

*Appeal from St. Louis City Circuit Court.*

REVERSED AND REMANDED.

*Stone & Sleven* for appellant.

(1) Where there is a right there will be a remedy,
and, if none be given, one will be implied. "*Ubi jus,
ibi remedium.*" *State v. Severance*, 55 Mo. 378 ;
*Carondelet v. Picot*, 38 Mo. 125 ; *Camden v. Allen*, 2
Dutcher, 398 ; Dillon on Mun. Corp. [ 3 Ed.] sec. 818 ;
*Householder v. City of Kansas*, 83 Mo. 488 ; *Greely v.
Bank*, 98 Mo. 458. (2) A bill in equity may contain
but one count ; and it may include several legal causes
of action, all constituting but a single equitable cause
of action. Mo. Prac. [ Green & Meyer ] sec. 893. (3)
The city and board of public schools are not necessary
parties ; they are not even possible parties. This is
evident: *First.* Because they have no powers, except
such as are delegated. *St. Louis v. Shields*, 52 Mo.
354. *Second.* Because in the matter of taxation
nothing will be presumed in their favor, and for every
act express authority must be shown. *State v. St.
Louis County Court*, 13 Mo. App. 53 ; *Ray Co. v.
Bentley*, 49 Mo. 236 ; Cooley on Taxation [ 2 Ed.] pp.

275, 276. *Third.* Because the city and board of public schools are merely agents of the state. Desty on Taxation, sec. 97, p. 472; *State v. Harper*, 58 Mo. 531. *Fourth.* It is otherwise with the state, which has all the power of taxation not withheld from exercise in the making of state and federal constitutions, and in support of whose action, consequently, the most liberal intendments are to be made. Cooley on Taxation [2 Ed.] p. 107. *Fifth.* Revenue collected through the authority of the state, acting by its agents (cities and counties), whether for appropriation to state wants, or to those of the city or schools, is the property of the state, as trustee, for the purposes declared in the imposition of the tax. *State v. Court*, 34 Mo. 546; *State v. Bonner*, 5 Mo. App. 13. (4) A misdescription of *cestui qui use*, in an action for money of which the state is trustee, furnishes no ground for demurrer. *State v. Bonner*, 5 Mo. App. 13. (5) The state has an equitable lien on personalty for taxes. *Phillips v. Rowse*, 49 Mo. 586; *In re Ins. Co.*, 3 Keyes, 124; Burroughs on Taxation, sec. 109, p. 269, and sec. 140, p. 434; *Greely v. Bank*, 98 Mo. 458.

*Smith & Harrison* for respondent.

(1) A tax is an impost levied by the authority of the government upon its citizens for the support of the state. It operates *in invitum*. It is not founded on contract, and, in its essential characteristics, it is not a debt or in the nature of a debt. *Carondelet v. Picot*, 38 Mo. 125; *State v. Court*, 13 Mo. App. 53; *Camden v. Allen*, 26 N. J. L. 398; *Pierce v. Boston*, 3 Metc. 520; *Shaw v. Peckett*, 26 Vt. 482; *Packard v. Tisdale*, 50 Me. 376. (2) A tax is not a lien, unless it is expressly made so by the law or ordinance which imposes it. There is, therefore, in this state no lien for taxes upon personalty prior to actual seizure by the officer. *State v. Goodnow*, 80 Mo. 271, 285; *Heine v. Levee Com.*, 19

Wall. 659 ; *Tompkins v. Railroad*, 18 Fed. Rep. 344 ; *Philadelphia v. Greble*, 38 Pa. St. 337 ; *Board v. Company*, 18 W. Va. 441, 445. (3) The power to collect taxes is purely statutory, and the collector can take no step which is not provided for by the statute. Where the legislature has given a specific remedy for the collection of a tax, that and no other can be resorted to. If that remedy be insufficient the legislature, and not the court of chancery, must supply the defect. Our statute gives no such remedy as that sought in the case at bar, and the power of seizure and sale specifically given to the collector by section 7608, Revised Statutes, 1889, is, therefore, exclusive of every other remedy and proceeding for the collection of personal taxes, and whether such power can be exercised in a case such as the one at bar is not material. Other means of collection than those provided by the statute are to be considered as if expressly forbidden. *Carondelet v. Picot*, 38 Mo. 125 ; *McPike v. Pen*, 51 Mo. 63 ; *Alexander v. Hilber*, 35 Mo. 334 ; *State v. Court*, 13 Mo. App. 53 ; *State ex rel. v. Goodnow*, 80 Mo. 271 ; *Andover v. Gould*, 6 Mass. 40 ; *Crapo v. Sletson*, 8 Metc. 393 ; *Stevens v. Evans*, 2 Burrows, 1152 ; *Camden v. Allen*, 26 N. J. L. 398 ; Sedgwick on Construction of Statutes [ 2 Ed.] 343 ; *Board v. Company*, 18 W. Va. 441 ; *Packard v. Tisdale*, 50 Me. 376 ; *Durant v. Supervisors*, 26 Wend. 66 ; Cooley on Taxation [ 2 Ed.] 15, 16. (4) The demurrer was rightly sustained, for the further reason that there is a defect of parties plaintiff, in that neither the city of St. Louis nor the board of public schools of the city of St. Louis is made party plaintiff in the cause. (5) The action was wrongfully brought in the name of the state of Missouri. (6) The petition does not state facts sufficient to constitute a cause of action against this defendant. (7) The several alleged causes of action, set out in the petition, should have been separately stated. *Gaslight Co. v. City of St. Louis*, 86 Mo. 495.

THOMAS, J.—This is a suit to recover delinquent state, city and school taxes assessed on personalty for the years running from 1877 to 1884, inclusive. Throughout the period named, one William C. Jamison was administrator of the estate of A. Tholozan, and, as such, had received into his possession the personal property, the assessments upon which are the basis for this suit. This property, with which Jamison was chargeable as such administrator, varied in amount from year to year. In December, 1884, Jamison's letters were revoked, and thereupon respondent was appointed, and is now, the administrator of said estate in his stead. It appears that Jamison failed to pay the taxes, and that respondent refuses to pay the same, although he has in his hands ample personal property belonging to said estate out of which they can be satisfied.

The prayer of plaintiff's petition is for judgment for the amount of the taxes, with interest and commissions on the same; that the same be by the court declared to be an equitable lien upon the personal property of the estate aforesaid in the hands of respondent; that respondent be required to pay to plaintiff the amount so adjudged to be due, and for general relief.

The case comes to this court by appeal on a final judgment rendered in the court below, on a demurrer filed by respondent to plaintiff's petition. The grounds of the demurrer were: That the petition did not state facts sufficient to constitute a cause of action; that several causes of action were improperly united in a single count; and that there was a defect of parties plaintiff, in that the city of St. Louis and the school board were not made plaintiffs. The result we have reached in this case renders it unnecessary for us to discuss some of the propositions presented in the briefs of counsel, and we will confine ourselves to the questions:

*First.* Are taxes that accrue on the personal estate of a decedent, while in charge of an administrator or executor, a demand against an estate within the meaning of that word, as used in article 9, chapter 1, Revised Statutes, 1879? *Second.* If they be such, has the circuit court jurisdiction to establish them as a demand against the estate? *Third.* Was this action properly brought in the name of the state at the relation of the collector of the city of St. Louis?

I.   We hold that taxes that accrue on the personal estate of a decedent, while in charge of an administrator or executor, constitute a "demand" against the estate within the meaning of that word, as used in article 9, chapter 1, Revised Statutes, 1879, which is the same as chapter 123, Revised Statutes, 1865. The first section of this article provides, that all demands against deceased persons shall be divided into classes. The third classification is in these words: "*Third.* All debts, including taxes due the state or any county or incorporated city or town; and it shall be the duty of the executor or administrator to pay all such taxes without any demand therefor being presented to the court for allowance."

It is argued by appellant, and seems to be conceded by respondent, that the taxes mentioned in this classification are such only as accrued during the lifetime of the decedent, and, in support of this, *Presbyterian Church v. McElhinney*, 61 Mo. 540, and *Ferguson v. Carson*, 13 Mo. App. 29, are cited. We do not think these cases support the doctrine contended for. In *Presbyterian Church v. McElhinney, supra*, a testator had made a will bequeathing his property to his wife for her life, and then after the payment of his debts and the debts of his wife to the plaintiff. The widow of the testator took charge of the estate as executrix and made final settlement in 1860. She died in 1868, and her brother took out letters of administration *de bonis non* with the will annexed. Claims, as the debts of the

widow, created in the years immediately preceding her death, were presented and allowed against the estate of her husband. The administrator *de bonis non* applied for an order to sell the real estate for the payment of these demands. On these facts, Judge SHERWOOD, delivering the opinion of the court, said: "Under our statute respecting administration and the repeated adjudications of this court thereon, probate courts possess no power to allow any claims against a decedent's estate or to order the sale of land belonging thereto, except for the payment of the debts of the deceased, *i. e.*, those in existence at the date of his death," and the learned judge cites in support of that position: *Farrar v. Dean*, 24 Mo. 16; *Aubuchon v. Lory*, 23 Mo. 99, and *Chambers' Adm'r v. Wright's Heirs*, 40 Mo. 482.

That the above language, as applied to the case then before the court, announced the correct principle, there can be no question. That was an application for the sale of land to pay debts made at least eight and probably twelve or fourteen years after the first administration had been closed by final settlement. The property, no doubt, had gone into the hands of the residuary devisee and it could not have been held, without contravening every principle of equity, as well as every principle involving the jurisdiction of probate courts, that the land could be sold for the payment of such debts as were created, as these were, long years after final settlement. These were not debts of the decedent in any sense whatever. They were debts of the widow. The court in that case held that the testator created an equitable charge upon his land for the debts of his wife, but the only way to enforce such equitable charge was by a proceeding in a court of equity, in which the party holding the land could be brought before the court which could afford full and adequate redress and protection to the rights of all the parties in interest.

Counsel evidently misinterpreted the intent of Judge SHERWOOD in his quotation of the cases named. In the extract we have quoted *two* propositions are laid down: *First.* That a debt, to be allowable against an estate, must be in existence at the death of the deceased. *Second.* That lands cannot be sold to pay the debts accruing after the death of decedent. Some of these cases, at least, must have been cited in support of the second proposition. In *Aubuchon v. Lory*, *supra*, it was held that an executrix could not sue for trespass to the land of the estate, committed since his decease. Not a word is said about debts of the deceased being allowed against the estate.

In *Farrar v. Dean*, *supra*, it appeared that one Scheme owned a lot in St. Louis. He left St. Louis in 1819, and was never heard of afterwards. At that time he was very old. In 1850, the public administrator took charge of his estate. There was no personal property, and there were no debts due by the estate. The administration created the debts by making costs. The order of sale of the lot was made to pay the costs and taxes on the lot accruing during administration. It was held that there was "no case for an administration and the public administrator should have scouted the idea of interfering with it;" "nor can the probate court direct or order a sale of real estate *for costs* accrued after the administration begins, and only because it did begin. Such costs are not debts due by the deceased, nor debts at the time of the death of the intestate." Judge RYLAND, who delivered the opinion in that case, said : "We cannot shut our eyes to the fact that the administration was begun for the purpose of selling the lot,  *  *  *  for, unless this was the object in this administration, there is none other that we can perceive."

In *Chambers' Adm'r v. Wright's Heirs*, *supra*, the suit was prosecuted to recover expenses of suits concerning the title to lands, which were prosecuted or defended

by the administrator after the decease of the owner of the land. The action was based on a contract of the intestate and defendant's ancestor, and the court held that the administrator had no such interest in the land as warranted him in bringing or defending any action in regard to it, and that these expenses were not debts due by deceased either before or after his death. The court also held that the contract involved did not bind the heirs or legal representatives of the contracting parties. The court uses this language: " If any demand had arisen upon a breach of this contract in favor of William Chambers in his lifetime or after his decease, it would doubtless have been a debt against the other parties or their estate." We hold that the cases of *Presbyterian Church v. McElhinney*, *supra*, and the cases quoted by the judge in that case, do not support the doctrine that taxes that accrue on personal estate during the pendency of an administration are not a demand against estates within the meaning of our administration law.

Instead of the case of *Ferguson v. Carson* being an authority for this doctrine, we deem it an authority that there are *some* debts, that accrue after the death of decedent, which are, in legal contemplation, demands against his estate, which may be allowed and classed. That case came to this court and is reported in 86 Mo. 673. There the decedent had been sued in his lifetime, and before the suit was terminated he died. Judgment finally went against his administrator and an appeal was taken and Ferguson became surety on the appeal bond. The judgment was affirmed. Ferguson bought the judgment and had it assigned to Jamison for his benefit and afterwards presented the amount thus paid to the probate court for allowance in his favor and it was allowed. An application was then made for a sale of real estate to pay this claim and it was insisted that as the debt in Ferguson's favor did not exist at the death of the decedent the probate court had no jurisdiction

to allow it or to order the sale of land to satisfy it. But this court held that this debt was a demand against the estate and there was no error in allowing it as such and ordering the sale of real estate to pay it. Judge BLACK, delivering the opinion of the court, said: "Here the original debt was in existence and in suit at the death of Carson. In the defense of the suit the administrator found it necessary to give the appeal bond. Ferguson became the surety for the estate and in its behalf. When he paid the debt and presented his demand it did not lose its character as a debt of the estate. To hold otherwise is to put estates of deceased persons at a great disadvantage in procuring sureties when required in litigated causes. The debt thus allowed is a debt of the estate within the meaning of the administration laws, to pay which lands may be sold."

It must be observed that this claim was held to be a demand against the estate on the doctrine of relation. The court did not refer to the case of *Sauer v. Griffin*, 67 Mo. 654, which involved the identical question, except that in the latter case the surety did not pay the debt until after *final* settlement of the estate and the suit was against the heirs of decedent and not against the administrator. Judge HOUGH, delivering the opinion of the court, said: "Here there was no claim which could have been presented for allowance during the existence of the administration. There was an obligation, it is true, out of which liability subsequently arose, but during the life of Welch, and pending the administration on his estate, it was purely contingent and incapable of presentation or allowance. His liability on the bond did not become fixed *until after final settlement.*" In the *Ferguson v. Carson case* it was held that the debt existed all the time and when Ferguson paid it he became subrogated to the rights of the debtor. This was not said in so many words, but that is the evident intent of the court. When he paid the debt, he did not extinguish it, but it related back to the

inception. That was allowed against the estate because the surety paid it before *final* settlement. But, in the *Sauer v. Griffin case* it was held that the debt did not exist in a shape to be allowed till after final settlement. We do not deem the two cases in conflict, but we hold that the reasoning of the court taken altogether strongly corroborates the position we have assumed.

But there are adjudications in our state which hold that there are claims that *originate* during administration that ought to be allowed. In *Gamble v. Gibson*, 59 Mo. 585, it was held that fees paid by an administrator for services rendered by an attorney for the benefit of the estate ought to be allowed, though there was no statute expressly authorizing it. In *Williams, Adm'r, v. Heirs of .Petticrew*, 62 Mo. 460, it was held that the expenses incurred by the administrator in making a trip to Virginia in the interest of the estate constituted a legitimate demand against the estate. In *Powell v. Powell*, 23 Mo. App. 365, it was held that a claim for taking care of and feeding the stock of the estate, at the instance of the administrator, is a demand against the estate which is allowable.

Let us now examine the language of the statute we have quoted in regard to the taxes against estates of deceased persons and see if we can arrive at its meaning definitely : " All debts, including taxes due the state or any county, incorporated city or town," must be classed in the third class of allowances, and then it is added, "and it shall be the duty of the executor or administrator to pay all *such* taxes without any demand therefor being presented to the court for allowance." The contention is that the word "taxes" refers to the first clause of the language quoted and means only the taxes that occurred during the lifetime of the decedent. We do not concur in this. There is nothing in the phraseology of the statute to indicate an intent on the part of the legislature to so restrict its meaning. But the last clause shows conclusively that no such restriction

was intended. First, the general term "taxes" is used, and then it is made the duty of the administrator or executor to pay *such* taxes. If, therefore, the word "taxes," as used in the first clause, means the taxes only that accrue prior to the death of the decedent, then it is not made the duty of the administrator or executor to pay taxes that accrue subsequent to the death of decedent. No such construction has ever been given to this language among the people, lawyers or judges. It has been the common practice always for administrators and executors to pay taxes on the personal estate in their hands and to present vouchers for same in their settlements. Indeed, the universal opinion has prevailed, that it was their duty to pay these taxes as well as those that accrued prior to administration, and such has been the ruling of this court in *Williams, Adm'r, v. Heirs of Petticrew,* 62 Mo. 460, *loc. cit.* 469. In that case taxes paid by the administrator were held to be properly paid, when it appeared that they not only accrued after administration, but were paid after the final settlement was filed. No question was there raised as to the duty of the administrator to pay the taxes that accrued after administration and *before* the filing of the final settlement.

This construction of the statute is not only supported by the common practice, but it is in conformity to reason and common sense as well. Hence, we conclude that the taxes referred to in the statute we have quoted mean all taxes, on personal property at least, whether they accrue prior or subsequent to administration. But it may be claimed that only such taxes as accrue prior to administration can be allowed and classed by the probate court. As we have seen, all these taxes stand on the same footing. If any can be allowed and classed by the probate court, all can. But it may be urged again that it is the duty of the administrator or executor to pay the taxes without having them allowed. The meaning of the statute is, that it is

the duty of the administrator or executor to pay the taxes, the validity or amount of which he does not dispute, and where he has the funds of the estate in his hands sufficient to pay them. It never was intended to preclude the administrator or executor from disputing the validity of the tax, or its amount, or from showing he had no funds with which to pay them, whether they accrued prior or subsequent to the death of the decedent. When he does not dispute the validity of the tax, or its amount, and he has funds he can apply to that purpose, it is his duty to pay it; but, if he contests the matter for any reason, there must be an appeal to some tribunal to settle the dispute.

The legislature evidently intended to place taxes on a different basis from other claims and to make them in a degree preferred demands, and it is made the duty of the administrator to pay them without waiting to have them allowed. But taxes are not the only demand against the estate that an administrator may voluntarily pay. Section 230, Revised Statutes, 1879, provides that, "upon every settlement, the executor or administrator shall show that every claim for which disbursements have been made has been allowed by the court according to law, or shall produce such proof of the demand as would enable the claimant to recover in a suit at law." And in *Williams, Adm'r, v. Heirs of Petticrew, supra*, it was held that, when an administrator asks credit for a claim not allowed by the court, he sustains the same relation to the estate that the claimant would sustain if he were presenting it.

In *Powell v. Powell, supra*, the proposition under discussion was argued and submitted to the court. It was contended that because the claim there involved originated after administration, and by direction of the administrator, he could *voluntarily* pay it; that he ought to pay it; and, because he could and ought to do this, it could not be allowed by the court. Judge PHILIPS, speaking for the court, said: "The account

must be presented to the probate court for its inspection and approval. What difference can it make to the parties in interest whether it be presented for allowance by the administrator or the party who gave the credit? The law looks to substance rather than mere form. An administrator refuses to pay for the necessary supplies. What is the remedy of the party who has done the work, procured to be done by the administrator in the exercise of the statutory power? * * * The court, for the protection of the estate against unreasonable provision made by the administrator, is to pass upon the claim. It would, in my opinion, be sticking in the bark to say that the claim can only be allowed as a credit to the administrator, instead of allowing it in favor of the meritorious party, whom the statute authorized the administrator to employ."

So, in the case at bar, we say that to hold it to be the duty of an administrator to pay a tax, and that he has a right to pay it and get credit for it in his settlements, and then to hold that, if he refuses or fails to perform that duty and to exercise that right, no court can compel him to do it, would be extraordinary, if not absurd. Our conclusion, therefore, is, that all taxes that accrue prior to the death of the decedent or during the administration are demands against the estate, which the administrator can pay and which it is his duty to pay; but which, if he fails to pay, ought to be allowed by the court having jurisdiction.

II. Having answered the first question in the affirmative, let us proceed to the second we have propounded.

Has the circuit court jurisdiction to establish a demand for taxes on personal estate accruing after the death of decedent? Such taxes being a demand against an estate within the meaning of our administration laws, it follows that such demand may be established either by the probate or circuit court. On this point we approve the conclusion reached as well as the

reasoning of Judge PHILIPS in the case of *Richardson v. Palmer*, 24 Mo. App. 480. He declared the law as it is and as it ought to be.

III. This brings us to the third question, which involves the right of the collector of the city of St. Louis to institute this suit in the name of the state at his relation and to his use. By section 6863, Revised Statutes, 1879, the collector of that city has power to collect the taxes due the state. By section 3, article 5, of the scheme and charter of the city he is authorized to collect city taxes except water rates ; and by section 28, article 22, of laws applicable to St. Louis ( R. S. 1889, p. 2174 ), he is authorized to collect the school taxes. All these taxes were levied by authority of the state through its agents, the officers of the municipalities. Desty on Tax., sec. 97, p. 472; *State v. Harper*, 58 Mo. 530. The state has an interest in the collection of the taxes whether any part of them go to it or not. *State v. Hobert*, 12 Neb. 408.

"It is admitted," says Judge BLISS, in *State to use v. Rowse*, 49 Mo. 592, "that the *state* has no express lien by statute upon personal property for taxes assessed against its owner on account of such property. * * * But in the absence of such a lien the inquiry arises whether the obligation to pay taxes is not of such an imperative character as to make the claim of the *state* upon the property of the tax debtor paramount to that of other creditors. By the common law all debts due the crown were preferred to claims of private citizens. So far as taxes are concerned, every consideration requires that this rule be rigidly observed. Their collection is vital to the enforcement of the law and the very existence of government."

And in *Greely v. Bank*, 98 Mo. 458, Judge BRACE uses this language : "It may be conceded that the state did not have an express lien upon the assets that went into the hands of the receiver, but it had a right paramount to other creditors to be paid out of those

assets, a right which it could have enforced through its revenue officers by the summary process of distress, but for the fact that the property and assets of its debtor had passed into the custody of its courts." In both of these cases it is assumed that *all* taxes are due to the *state*, and that the state's right to payment is paramount to other creditors.

When the state has an interest it is competent for it at common law through its officers to protect such interests, and enforce its rights. *State ex rel. v. Court*, 51 Mo. 350; *Rubey v. Shain*, 54 Mo. 207; *State ex rel. v. Hager*, 91 Mo. 452. Respondent concedes the rights of the state in this case, but denies the remedy. Indeed, he argues that there is *no* remedy. If we admit the right and deny relief in any form, we stamp as false the motto that stands over the portals to the building in which this court sits, *Ubi jus, ibi remedium*. That taxes may be legally levied upon the personal estate in the hands of the administrator is conceded by all. That the state loses its right to collect such taxes by distress against the personal property of deceased, we think, is clear. *Wilson v. Lewis*, 9 Met. 504. To permit the collector to seize the goods in the hands of the administrator and sell them for payment of taxes would contravene not only the letter but the whole scope and spirit of our laws for the administration and settlement of estates. If, therefore, the administrator refuse or fail to pay the taxes, the courts must provide the remedy or there can be none. We think the state had a remedy, for the collection of the taxes in dispute in two forums. The probate and the circuit courts had jurisdiction to establish the demand against the estate. The action was, therefore, properly brought in the name of the state, at the relation of the collector, for the taxes due the city and schools. It is true the appellant calls the petition in the case a bill in equity, but we do not so regard it. That part of the prayer of the petition asking to have the taxes declared a lien

upon the personal estate in the hands of the administrator may be rejected as surplusage, and then it will be simply a petition to establish a demand against an estate under section 191, Revised Statutes, 1879.

This is a proceeding *sui generis*.   It is not an action in the ordinary sense.   It is simply a proceeding not to recover money but to *establish* a claim against an estate. The language of the statute is that "any person having a demand against an estate may *establish* the same by the judgment or decree of some court of record in the ordinary course of proceeding and exhibit a copy of such judgment or decree * * * to the probate court."   When the demand is thus established, it is not to be collected by execution against the property of the estate or attachment against the person of the administrator as for contempt, but it "may be exhibited to the probate court," and the latter court then has jurisdiction to order its payment as provided by the administration laws.

As the case is to be remanded for trial, we will say that the petition improperly unites in one count the taxes for several years.   The taxes of each year ought to be set out in a separate court.   The defendant demurred to the petition on this ground among others. This he could not do.   His remedy was by motion to require plaintiff to elect upon which cause of action he would go to trial.   *Christal v. Craig*, 80 Mo. 367, and cases cited.   Judgment reversed, and remanded with conformity to this opinion; all of division number 2 concur.