There were other devises made which the testator particularly exempted from the payment of taxes.
Under Ohio laws, taxes for any year become a lien on the real estate on the day preceding the second Monday in April of that year, and are payable one-half not later than December 20 of that year, and one-half not later than June 20 of the following.
Taxes on the real estate covered by this devise were a lien thereon on the second Monday in April, 1892, three months before testator died, and were payable one-half in December, 1892, and one-half in June, 1893.
The question for determination is, who should pay the taxes ’ for 1892, the executors of the testator, or the trustee of Amy Yon Phul Bird? Construing the whole will for the purpose of gathering the intention of the testator relative to the devise in question, it is clear that he intended his daughter Amy to take the last year’s rents of the property devised, less such sums as should be assessed against it for taxes and the other charges named. The entire income for the entire year was to be hers, less the taxes for that time. Her estate began July 14, 1892; but the taxes for that year had been a lien for over three months. *425 The testator proposed that all taxes chargeable against the real estate after his daughter’s estate ripened should be paid by her trustees.
It is certain that he did not intend that she should take an estate burdened by any debts he had contracted, or by any claims which were chargeable upon it by operation of law before her estate vested, but that she should pay all taxes assessed while she was in the enjoyment of the property devised to her.
Now she had no interest whatever until the testator’s death. If any authority is needed on this proposition, it may be found in Jarman on Wills, Section 18; St. Paul’s Epistle to the Hebrews, 9: 16,' 17. The subject of the devise was charged with the payment of taxes for 1892, long before the devise became operative; but the question upon whom the burden of discharging them shall be cast depends upon what time, whether before or after the vesting of the estate, the taxes were assessed. The lien dates from April, 1892, but the steps to be taken in making up the assessment all follow that date, and when taken and the amount of the assessment ascertained therefrom, they refer back to that time merely for purposes of enforcement of the payment of the tax. It will be pertinent, therefore, to inquire when the assessment is actually made.
Section 2691, Revised Statutes, provides that:
“The council (of cities) shall cause to be certified to the auditor of the county, on or before the first Monday in June, annually, the percentage by it levied on the real and personal property in the corporation returned on the grand levy, who shall place the same on the tax list for the county in the same manner as township taxes are by law placed thereon; the ordinance prescribing the levy shall specify distinctly each and every purpose for which the levy is made, and the per cent, thereof; and when a corporation has been formed or boundaries of a corporation extended subsequent to that time, the council shall determine whether it would be right and expedient to assess a tax on the taxable property in such territory for the current year.”
The last clause quoted shows that this act regarding the certification provided in the first part of the section is, with the proceedings certified, the assessment of the tax.
*426 Under Section 2798, Revised Statutes, “each district assessor shall, on or before the first Monday of July, 1880, and every tenth year thereafter, make out and deliver to the auditor of his county a return in tabular form, contained in a book to be furnished him by such auditor, of the amount, description and value of the real property subject to be listed for taxation in his district, which return shall contain: First, the names of the several persons, companies or corporations, in whose names the several tracts of real property other than town property in each township within his district shall have been listed, and in appropriate columns, opposite each name, the description of each tract * * * listed in such name, and the value of each separate tract, as determined by the assessor;” second, he is required to proceed similarly as to town lots. It is from these data that the amount of the assessment is to be arithmetically calculated.
Section 2821, Revised Statutes, provides that:
“The auditor of state shall on or before the first Monday of June, annually, give notice to each county auditor of the rates per centum required by the General Assembly to be levied for the payment of the principal and interest of the public debt, for the support of common schools, for defraying the expenses of the state, and for such other purposes as shall be prescribed by law; which rates, or per centum, shall be levied by the county auditor on the taxable property of each county on the duplicate, and shall be'entered in one column and denominated ‘state taxes.’ ”
This gives the auditor all necessary information before the first Monday of June of the assessment for state purposes, and so with township taxes.
Section 2827, Revised Statutes, requires that:
“The trustees of every township shall, on or before the fifteenth day of May, annually, determine the amount of taxes necessary for all township purposes, and certify the same to the county auditor; and there shall be levied annually, by the county auditor, for township purposes, * * * such rates of taxes as the trustees of the respective townships may certify to the county auditors to be necessary.”
And further, Section 2822, Revised Statutes, provides that:
*427 “The county commissioners shall, at their March or June session, annually, determine on the amount to be raised for ordinary county purposes, for public buildings, for the support of the poor, and for interest and principal on the public debt, and for road and bridge purposes, and they shall set forth in the record of their proceedings specifically the amount to be raised for each of said purposes.”
It therefore appears that before the first day of July all of the information relative to the grand levy is in the possession of the auditor, and by the first Monday in July he is advised of the property, by proper description, its ownership and location, and there is nothing more to be done but divide the total amount to be gathered into the proper pro rata amounts to be collected from the individual in whose name the property stood on the day before the second Monday in April. It is doing no violence to a fair construction of these statutes to say that the assessment on such is complete by the first Monday in July.
We are not without authority for this deduction. Says one author:
“In any case a listing and valuation of taxable lands is an absolutely necessary part of the process of taxation; and this list, containing a description of each piece of land sufficient to identify it and its estimated value, together with the rate per cent.; constitute an ‘assessment.’ ”
“The calculation and insertion of this specific amount (the precise amount of the tax against each parcel of land) is called the ‘extension of the tax,’ and being merely a clerical matter, the assessment is considered complete substantially without it; and since the rate is fixed by the ‘ levy, ’ it has come about, that the word ‘assessment’ is often applied as equivalent to ‘listing and valuation. ’ ’ ’ Blackwell on Tax Titles, 193; Judge Cooley to the same effect; and he adds:
“When the listing.and estimate are completed in such form as the law may have prescribed, nothing remains to be done in order to determine the individual liability but the mere arithmetical process of dividing the sum to be raised among the severel subjects of taxation, in proportion to the amounts which they are respectively assessed. Sometimes the word assessments is used as implying the completed tax list; that is to say, the *428 list of persons or property to be taxed, with the estimates with which they are chargeable, and the tax duly apportioned and extended upon it; but this employment of the word is unusual except in the cases in which the levy is apportioned by benefits.'”
Under the laws of New .York, the assessor was required to make up a roll containing substantially the same facts and information as the certificate required of the assessor by the laws of this state. In Rundell v. Lakey, 40 N. Y., 513, 516, 517, the court say:
“This roll * * * is to be delivered by the supervisors of the town or ward on or before the first day of September. This roll constitutes the. basis upon which the tax is imposed by the board of supervisors. After its completion and delivery, there is no power to alter or change it. It is conclusive as to the persons and property for apportioning the sum to be raised by taxation.
“It follows that at the time of the conveyance of the farm by the defendants to the plaintiff, the former, in consequence of their ownership, had become liable for the payment of the tax for the current year. That the time when they so became liable was the time of the completion and delivery of the roll, although the amount of the tax was not ascertained and fixed for some two months afterwards, yet the foundation of the liability was complete. They owned the property at the time fixed by law for determining who should be taxed therefor as owner.”
There seems to be no doubt but that in reason and from authority the taxes for 1892 were assessed against this property before July 14, the date of testator’s death. If so, then he did not intend that any assessment charged against him and his land in his lifetime should be paid by the beneficiary under this devise. The will provides that the executors shall first pay testator’s “just debts and funeral expenses,” and counsel for the executors contends that the devise itself is in conflict with the provisions in that it provides that the beneficiary’s trustee shall pay the taxes on the Fourth street property, and invokes the well settled principle that where, in a will, there are two repugnant clauses, the last written shall prevail. There can be no quarrel with this proposition, nor is there any in this ease; for if the intendment of this devise has been properly ascer *429 tained, then there is no conflict between clauses or repugnancy whatever. The taxes with which the devise is burdened are those assessed after it came into being, not back taxes. It would be just as logical for the executors to claim that if the testator had neglected to pay taxes for several years, and they had accumulated with penalties, they must be discharged by the beneficiary of this devise before enjoying her estate, because the testator burdened it. with the payment of all taxes which should be assessed against it after it came into existence.
Whether the liability is a debt in the ordinary sense does not seem to me material to the inquiry. It is at any rate a charge against the estate of Henry Yon Phul, just as much as it was a charge against him the day before he died.
Under the laws of this state the executor or administrator is required to apply the assets to the payment of the debts in the following order:
4. Public rates and taxes, that is to say, taxes properly chargeable against the decedent, shall be by his executor paid out of the personal estate. Similar statutes in other states have been passed oh by these courts, and the taxes were required to be paid by the personal representatives. State v. Tittmann, 103 Mo., 553, 566; Coleman v. Coleman, 5 Redf. (N. Y.), 524. And even where there was no statute apparently on the subject, the holding was to the same effect. Seabury v. Bowen, 3 Brad. (N. Y.), 207; Cadmus v. Combes, 37 N. Y. Eq., 264; Griswold v. Griswold, 4 Brad. (N. Y.), 216; Bonaparte v. State, 63 Md., 465. And further, and' as conclusive, it seems to me, of this case, is the case of Babcock, In re, 115 N. Y., 450. In that ease the testator devised his property to his daughters for life, remainder to their issue. He died July 2, 1887, after the delivery of the assessment rolls to the aldermen for the ascertainment of the amount of the tax and its extension thereon. The remaindermen claimed that the taxes should be paid by the life tenant out of the income. It was held that it was proper for the executors to inventory the taxes as liabilities of the estate, payable out of the personalty, and that “an assessment, so far completed that the name of the person mentioned as owner can not be changed or altered by the assessment officers before the death *430 of such person, is payable from his estate in due course of administration. ’ ’
Matthews & Cleveland, for plaintiff.
Cortez Ewing, for the executors.
And Section 2838, Revised Statutes, which establishes the lien, also provides that “the personal property of any deceased person shall be liable, in the hands of any executor or administrator, for any tax due on the same by any testator or intestate. ’ ’ Thurman, J., in Creps v. Baird, 3 Ohio St., 277, lays down the rule that “taxes due upon lands are a personal debt of him in whose name the lands stand listed when the taxes accrue, as well as a lien upon the lands, unless ‘the same are not his property, and are erroneously charged in his name for taxation.’ ”
Now this property was properly listed in the name of Henry Yon Phul. He owned it when the taxes accrued, and the mere fact that for purposes of convenience the taxes were not payable until a time after his death is not material in determining when he and his property were chargeable with their payment.
Clearly, it seems to me, the executors must pay the taxes of ■1892. Judgment accordingly.