JOHN G. LEWIS *vs.* W. H. DAVIS and R. G. DAVIS.

CHIEF JUSTICE LEE delivered the decision of the Court.

When the jury take the law into their own hands, and find a verdict contrary to the law, without regarding the instructions of the court, the court will set aside such a verdict so often as it is returned.

This was an action of ejectment brought to recover possession of a certain lot in Honolulu, the title to which had been previously litigated before the Land Commission and Supreme Court, and finally de-

cided to be in the heirs of Polly Holmes. The plaintiff claiming to be one of the heirs of Polly Holmes, and the true representative of the other heirs, brought this suit to recover the possession of the property.

On the trial of the case at the last April Term, the court charged the jury that the finding of a former jury of the Supreme Court, on an appeal from the Land Commission, that the. title was in the heirs of Polly Holmes, was conclusive and binding upon the parties, and that if they found the plaintiff Lewis to be heir of Polly Holmes and the true representative of the other heirs, his brothers, their verdict should be for the plaintiff. The jury after a short absence returned into court with a special verdict, to the effect; that the plaintiff was the heir of Polly Holmes through his own right and as the representative of his brothers.

The counsel for defendants objecting to a special verdict, the court instructed the jury to find a general verdict for either the plaintiff or the defendants; whereupon they retired, and after a long absence finally rendered their verdict for the defendants, three jurors dissenting in favor of the plaintiff.

The counsel for the plaintiff now moves the court for a new trial, on the ground that the finding of the jury was directly in contravention of their first verdict, the ruling of the court, the evidence and the law.

This court has always been reluctant to grant new trials, especially in cases where they have been asked on the ground that the verdict was contrary to the evidence, for where the question was one of fact, and the jury had properly weighed and passed upon the evidence, the court has not felt authorized to set the verdict aside, although it might upon the same evidence have been of a different opinion. But where the jury take the law into their own hands, and find a verdict contrary thereto, without regarding the instructions of the court, the case is different, and the court are bound to set aside such a verdict so often as it is returned. This rule is so well established as to render it unnecessary to cite any authorities in its support.

That the jury is to pass upon the facts and the court upon the law, is a principle which lies at the foundation of jury trial in every country blessed with this institution; and as the court is responsible for the correctness of the law, it may not permit the jury, in civil actions at least, to usurp its authority; for if it does there would be no certainty in the administration of justice. It is our desire always to sustain and confirm verdicts where we can do so without violating the law, but when it is manifest that the jury have mistaken their duty we shall not hesitate to set their verdict aside and grant a new trial.

The doctrine on this subject is ably set forth by Lord Mansfield in Bright *vs.* Eynon, 1 Bun. 393, and by Chief Justice Shaw in the case of Cunningham *vs.* Magoun, 18 Pick. R. 13.

" Trials by jury," says the former, " in civil cases, could not subsist now without a power, somewhere to grant new trials."

" There are numberless causes of false verdicts, without corruption or bad intention of the jurors. They may have heard too much of the matter before the trial, and imbibed prejudices without knowing it. The cause may be intricate; the examination may be so long as to distract and confound their attention."

" Most general verdicts include *legal consequences* as well as propositions of fact; in drawing these consequences the jury may mistake, and infer directly contrary to law."

" If *unjust* verdicts obtained under these and a thousand like circumstances, were to be conclusive forever, the determination of civil property, in this method of trial, would be very precarious and unsatisfactory. It is absolutely *necessary to justice* that there should, upon many occasions, be opportunities of *reconsidering* the cause by a new trial."

Chief Justice Shaw in the case of Cunningham *vs.* Magoun, says: " The great principle which is at the basis of jury trial, is never to be lost sight of, that to all matters of law, the court are to answer; to all controverted facts, the jury. The verdict of a jury is practically to be taken for truth.

"Formerly this distinction was effectually preserved by special pleading, whereby juries were compelled to answer yes or no, to a precise fact, averred on one side and denied on the other, and by attaints and other expedients, where juries departed from the truth, through prejudice or corrupt motives. But by the prevailing use, in modern practice, of general declarations and general issues, the jury is in most cases left to find a general verdict, which necessarily embraces the whole matter of law and fact. The mode of trial therefore necessarily is, when the evidence is out, for the court to direct the jury hypothetically, adapting the instructions in point of law to the state of the evidence, putting it to the jury to return a verdict for the plaintiff or defendant, as they shall find certain facts proved to their satisfaction or otherwise, by the evidence. The consequence obviously is, that the jury, in finding a general verdict, do in form return a verdict embracing the matter of law as well as fact; and, therefore, as they may mistake the instructions of the court, or may take the law into their own hands, imagining it to be severe or inequitable, they may return a verdict manifestly against the law and truth of the case. To render such a mode of trial safe and tolerable, there must exist a power, somewhere, to re-examine verdicts with some freedom, and when it is manifest that juries have been warped from the direct line of their duty, by mistake, prejudice, or even by an honest desire to reach the supposed equity, contrary to the law of the case, it will be the duty of the court to set the verdict aside. When, therefore, the evidence is clear, plain and strong, and the law has been clearly and explicitly stated to the jury, and they decide against the law, it imposes upon the court the duty of interfering, because it must be apparent, that the jury have either unintentionally erred, by mistaking the terms of their instructions, or misapprehended the weight of the evidence, or that they have mistaken their duty or abused their trust."

How the jury, after their finding their first verdict, could find the latter, I can form no idea. Whether it was from misunderstanding the direction of the court, mistake, prejudice, or an honest desire to do what they thought was equity, I cannot tell, but clear I am, the verdict is contrary to the law, and I think the motion for a new trial should be granted. My associates entirely agree with me in this opinion, and our judgment is, that the motion be granted, and that the costs of this suit abide the event of the new trial.