THE STATE ex rel. KARRENBROCK, Collector of St. Louis County, Appellant, v. MISSISSIPPI VALLEY TRUST COMPANY.

Division One, February 26, 1908.

1. **TAXATION: Assessment: Constructive Notice.** Where the tax was assessed to "Rebecka W. Briggs, T. T. Turner, trustee," Turner's executor is not to be held to have had constructive notice of the contents of the tax records of the county where Turner resided, since the taxes were not assessed in Turner's name. "T. T. Turner, trustee," may be considered as much a memorandum for the tax officials as anything else.

2. ————: **Trust Estate: Death of Trustee.** By will a testator left property in trust for Rebecka W. Briggs, to certain trustees and their successors, and on their refusal to qualify, Turner was appointed trustee, and died after the property was assessed "in the name of Rebecka W. Briggs, T. T. Turner, trustee," but before the taxes were levied Turner died, leaving a will by which he named defendant as executor, and as such executor defendant came into possession of a part of the fund earmarked as a trust. *Held,* that defendant had a legal duty to perform

in relation to the fund, namely, as a kind of bailee, to preserve the fund intact for the true owner and to turn it over when trustees were appointed by a competent court, but the right to administer the estate did not continue to Turner's executor, but vested exclusively in trustees to be appointed.

3. ——: ——: **Delegation of Trusteeship.** Trust powers donated by will to named trustees and their successors cannot be delegated by the trustee's will.

4. ——: ——: **Appointment of Trustee.** Where the trust fund has come into the possession of the trustee's executor, and he holds it until other trustees are appointed and is ordered by the proper court to turn it over to them and does so, he is stripped of the fund out of which the trustee's estate, or he, could be reimbursed, had he paid taxes assessed against the trust estate.

5. ——: ——: **Laches.** The State's demands for taxes cannot be defeated by the laches of its officers, yet it is not entirely without significance that an executor, who administered the estate of the trustee of the trust estate, against which the taxes were assessed, can be reimbursed for the payment of the taxes only under equitable doctrines and out of a trust fund; neither, on broad lines of natural justice, is it without significance that the State waited until the last day to sue the executor of the trustee for taxes due from the trust estate assessed before the trustee's death but not levied until after his death, during which time the executor had, in obedience to an order of court, turned the trust fund over to trustees resident of another State, and had made final settlement of the trustee's estate.

6. ——: **Payment By Executor.** Where personal taxes due from a trust estate were assessed before the trustee's death but not levied until after his death, his executor is not personally liable for the taxes after, in obedience to order of court, he has turned over the trust fund to other duly appointed trustees.

7. ——: **Debts: Classification.** For the purpose of allowance and classification taxes may be treated as a debt, and it is provided by Sec. 9246, R. S. 1899, that they shall be allowed against the estate the same as other debts, that is, by the judgment of the probate court.

8. ——: **Sections 4259 and 4260: Insolvency.** Sections 4259 and 4260, Revised Statutes 1899, apply only to insolvent estates. They do not hold liable, for taxes due from a solvent trust estate, the executor of the trustee's estate.

9. ——: **Trust Estate: Final Settlement of Trustee's Estate.** Even if the trustee's estate were liable for taxes due from the

trust estate—which is not conceded—the trustee's executor, having made final settlement and been discharged without any presentation or allowance of the State's claim for taxes, cannot be held personally liable for such taxes.

10. ————: ————: **Allowance.** Taxes payable by the executor without allowance are those directly levied against the property of decedent.

11. ————: ————: ————: **Payable By Trustee's Executor.** The executor of the trustee should not be put to the hazard of personally and correctly settling the doubtful questions of law involved in paying taxes on a trust estate once held by his trustee, but not held or administered by the executor.

12. ————: **Costs Against State: No Assignment in Motion.** The judgment for defendant in a suit for taxes will not be reversed because it assesses costs against the State, if the trial court's attention was not called to the error in the motion for a new trial and no motion in arrest was filed, but the judgment will be modified by eliminating that error.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

MODIFIED AND AFFIRMED.

*E. Henry Wolfsberger* and *Henry Higginbotham* for appellant.

(1)    While the State may present its claim for taxes, it is not compelled to do so; it is the duty of the executor to pay the taxes without any demand therefor being presented to the court for allowance.  R. S. 1899, sec. 184, subd. 3; secs. 4259, 4260 and 9246; State ex rel. v. Tittmann, 103 Mo. 553, 119 Mo. 661; State ex rel. v. Burr, 143 Mo. 209; State ex rel. v. Donaldson, 28 Mo. App. 192; United States v. Hahn, 37 Mo. App. 584; Kansas City v. Simpson, 90 Mo. App. 50; Bonaparte v. State, 63 Md. 465; United States v. Barnes, 31 Fed. 705; United States v. Herron, 20 Wall. 251; State ex rel. v. Kenrick, 159 Mo. 631, distinguished.  (2) The "executor, administrator or other person" becomes a trustee for the State and is bound to pay its debt as a

preferred claim in the third class of demands.   Such is the rigor of the statute that he cannot invoke the judgment of a court of competent jurisdiction directing him to distribute the assets to specified creditors as a justification, when it does not appear that the State was a party to the proceedings, or that he took the proper measures to secure the priority of the State in the distribution.   R. S. 1899, secs. 4259, 4260; United States v. Barnes, 31 Fed. 707; In re Vetterlein, 44 Fed. 57; United States v. Herron, 20 Wall. 251; Greely v. Bank, 98 Mo. 458; State ex rel. v. Burr, 143 Mo. 209; Kansas City v. Simpson, 90 Mo. App. 50; Bonaparte v. State, 63 Md. 465.   (3)   The doctrine of waiver, laches and estoppel cannot be invoked against the State. United States v. Barnes, 31 Fed. 709; United States v. Hoar, 2 Mason 314; Parkes v. State, 7 Mo. 194; Ray Co. v. Bentley, 49 Mo. 244; State ex rel. v. Tittmann, 119 Mo. 661; State ex rel. v. Fullerton, 143 Mo. 682. (4)   The assessment books and tax books are public records, and as such are open to the inspection of all persons.   And they impart notice to everybody of their contents.   State ex rel. v. Reid, 159 Mo. 85; State ex rel. v. Fullerton, 143 Mo. 687; Fleckenstein v. Baxter, 114 Mo. 496; Bonaparte v. State, 63 Md. 465.   (5)   Executors and administrators are affected with notice of taxes due upon the property in their custody, whether assessed before or after the death of the testator or intestate.   Bonaparte v. State, 63 Md. 465.   (6)   Taxes are debts within the meaning of sections 4259 and 4260, Revised Statutes 1899.   R. S. 1899, sec. 184, subd. 3; Greely v. Bank, 98 Mo. 458; State ex rel. v. Tittmann, 119 Mo. 661; In re Vetterlein, 20 Fed. 109; United States v. Barnes, 31 Fed. 705, 44 Fed. 57; In re Kirkland, 2 Hughes (U. S.) 208; United States v. Bank, 6 Pet. 34.   Whether taxes should be considered as an ordinary debt, or not so considered, can make no difference in the duty and obligation to the delinquent.

Phelps v. Brumbach, 107 Mo. App. 25. (7) Where a statute creates a right (to a tax) and gives no remedy, the party may resort to the usual remedy applicable to such a case. State ex rel. v. Severance, 55 Mo. 389; State ex rel. v. Tittmann, 103 Mo. 568; Phelps v. Brumbach, 107 Mo. App. 25. Under the Federal statute (secs. 3466, 3467, R. S. U. S.) the "executor, administrator, or other person" is held to be a trustee for the United States, and the usual remedies of *cestui que trust* against trustee apply. United States v. Hoar, 2 Mason 311; Matter of Rosey, 6 Ben. (U. S.) 507; United States v. Bank, 6 Pet. 34; Greely v. Bank, 98 Mo. 458; United States v. Hahn, 37 Mo. App. 580. (8) The statute makes no distinction between the case where the person assessed is the "owner" (that is, in his own right) of the property and where he has the "care, charge or management" of the same (as, for example, as trustee). R. S. 1899, secs. 9144, 9147, 9246; State ex rel. v. Burr, 143 Mo. 209; Kansas City v. Simpson, 90 Mo. App. 50; Elevator Co. v. Traill County, 50 L. R. A. 266; Swarts v. Hammer, 194 U. S. 441. (9) A valid assessment is the jurisdictional matter in taxation. The statute, as to matters thereafter, is directory merely. When the assessments and levy are completed, the details relate back and take effect as of June 1st. State ex rel. v. Philips, 137 Mo. 264; State ex rel. v. Edwards, 136 Mo. 368; DeArman v. Williams, 93 Mo. 158; McLaren v. Sheble, 45 Mo. 130; Cooley on Taxation (3 Ed.) 604. (10) Neither the State, county nor the collector is liable for costs, nor can any be taxed against them or any of them. R. S. 1899, sec. 9246; Pollard v. Atwood, 79 Mo. App. 193.

*Hamilton Grover* for respondent.

(1) Under the law of this State, a suit in the circuit court for a personal judgment for taxes on personal property can only be maintained against the

"party assessed with the taxes." The taxes here involved were assessed against "Rebecka W. Briggs, T. T. Turner, trustee." The Mississippi Valley Trust Company is not "the party assessed with the taxes" herein sued for. R. S. 1899, sec. 9246; State ex rel. v. Kenrick, 159 Mo. 631. (2) Relator bases his right to recover in this suit upon four sections of the statutes of this State, to-wit: section 184, sections 4259-4260, and section 9246, Revised Statutes 1899. If his construction of any one section is erroneous, this suit must fail. (3) The taxes which sec. 184, Revised Statutes 1899, make it the duty of an executor to pay without being presented to the probate court for allowance, are taxes levied upon the property of the decedent during his lifetime, or accruing on his estate after his death, as distinguished from taxes levied after his death upon property in which he had no interest, but held merely as trustee. Langston v. Canterbury, 173 Mo. 135; State ex rel. v. Tittmann, 103 Mo. 553, 119 Mo. 665. (4) Sections 4259 and 4260 simply establish a priority of payment in cases of insolvency. They have no application whatever to an estate which, like Turner's, was always abundantly solvent. United States v. Fisher, 2 Cranch 390; United States v. Griswold, 8 Fed. 502; United States v. Hooe, 3 Cranch 89; United States v. Wood, 28 Fed. Cases 753; United States v. Couch, 25 Fed. Cases 674; Prince v. Bartlett, 8 Cranch 434; United States v. Langton, 5 Mason 208; Conrad v. Ins. Co., 1 Pet. 438; Beaston v. F. B. of D., 12 Pet. 133; United States v. McClellan, 3 Sumn. 350; United States v. Canal Bank, 3 Story 81. (5) "Taxes" are not "debts" within the meaning of sections 4259-4260, but even if they are, they must be limited (in cases of deceased persons) to taxes levied against the decedent in his lifetime or accruing on his estate after his death, as distinguished from taxes levied after his death upon property in which he had no interest, but held merely

as trustee.     Carondelet v. Picot, 38 Mo. 130; State
ex rel. v. Snyder, 139 Mo. 553; Cooley on Taxation, p.
13; Bonaparte v. Maryland, 63 Md. 470; State v. Ruby,
77 Mo. 610.     (6) The "taxes" herein sued for, even
if a "debt," were not a "debt" until they were levied,
six months after Turner's death; and therefore were
not "a debt due from the deceased," within the mean-
ing of sections 4259 and 4260.     Langston v. Canter-
bury, 173 Mo. 135.     (7) Even if "taxes" are "debts"
within the meaning of sections 4259 and 4260, there is
nothing in those sections which waive the necessity of
presenting them to the probate court for allowance in
the case of deceased persons.     The only waiver in the
statutes is in section 184, which does not apply, for
reasons given under point 3.     (8) Statutory provis-
ions for the collection of taxes are exclusive.     Sections
4259 and 4260 simply establish a priority of payment,
and the means of enforcing that payment (where the
debt claimed is a tax), are found elsewhere in the stat-
utes and are exclusive.     Carondelet v. Picot, 38 Mo.
130; State ex rel. v. Snyder, 139 Mo. 553.     (9) Under
no circumstances could the executor be liable under sec-
tion 4260, unless he had notice of the claim before dis-
tribution was made.     The Mississippi Valley Trust
Company had no notice of the existence of this claim
until nearly a year after distribution and discharge.
United States v. Barnes, 31 Fed. 705; United States v.
Hahn, 37 Mo. App. 584; In re Vetterlein, 44 Fed. 57;
Bonaparte v. State, 63 Md. 465.

LAMM, J.—Judgment going in favor of defendant
in a tax suit, plaintiff appealed.     Defendant was sued
in its individual capacity for the recovery of a personal
judgment for taxes levied upon $142,760 of personal
property for the year 1897.     On that assessed valua-
tion was levied $356.90 State and State interest tax,
$713.80 county tax, and $499.66 school tax—aggregat-

ing $1,570.36.   The case has troublesome and singular features.

The petition was filed on the 31st of December, 1902—one day before the taxes became uncollectible by limitation (R. S. 1899, sec. 9246).   After alleging relator was collector of the revenue for the county of St. Louis, that relator in writing appointed appellant's counsel, Mr. Wolfsberger, with the approval of the county court, tax attorney, that defendant was a domestic corporation organized under the laws of this State relating to the incorporation of trust companies  and having its place of business in the city of St. Louis, the petition proceeds to charge that T. T. Turner was a resident of the county of St. Louis on the first day of June, 1896, and either owned or had the possession and care, charge or management of personal property situate in said county of the foregoing amount, subject to assessment and taxation for the taxes and funds mentioned; that said property was duly listed to him at said value in his name, as appears by a tax bill filed and marked "Exhibit A;" that said taxes were duly levied and then extended in the tax books for the year 1897; that the collector made demand of payment and diligently used all lawful means to collect said taxes; that notwithstanding that fact he was unable so to do; that said taxes are contained and extended in the personal delinquent tax lists for said year, allowed to the then collector in his annual settlement next after the end of that year, and which lists were delivered to and are now in the hands of relator, as a succeeding collector, for collection; that T. T. Turner died on the 30th day of January, 1897, testate; that by his will defendant was nominated executor; that said will was duly probated on the 5th of February, 1897, and said defendant presently qualified as executor and thereafter acted as such; that as such executor it paid debts other than said taxes; that such other debts were due and owing by

said Turner in his lifetime and due and owing by his estate and belonged in the third and lower classification of demands against the estate; and that at the time of paying said other debts said executor had ample assets in its hands to pay said taxes—all of which, with statutory penalties, interest, commissions and fees remain due and unpaid.

Wherefore, judgment was prayed for the amount of said taxes, with interest thereon from the first day of January, 1898, at one per cent per month, together with a collector's statutory fee of fifteen per cent on the full amount of tax and interest, and an attorney's fee of ten per cent for bringing the suit, and for all costs.

Exhibit "A" attached to the petition, is as follows:

"PERSONAL BACK TAX BILL.

"Statement of Delinquent Taxes on Personal Property, assessed in the County of St. Louis, in the State of Missouri, to and in the name of Rebecka W. Briggs, T. T. Turner, trustee, in Central township, for the year 1897, being all against the same person, in the names below stated, respectively:

| Number of Bill. | Year. | Assessed Valuation. | State and State Interest Tax. | County Tax. | School Tax, District 2, Tp. 46, R. 6. | Amount For The Year. |
|---|---|---|---|---|---|---|
| 3426 | 1897 | 142,760 | 356.90 | 713.80 | 499.66 | 1570.36 |

"In the name of Rebecka Briggs, T. T. Turner, Trustee.

"State of Missouri, County of St. Louis, ss.

"I H. W. Karrenbrock, Collector of the Revenue within and for said County of St. Louis, in the State of Missouri, do hereby certify that the foregoing is a true and correct statement and bill of delinquent taxes

remaining unpaid on the personal property, assessed against Rebecka W. Briggs, T. T. Turner, Trustee, in said county, in the name or names as therein stated, and according to the Tax Books in my office, and the said taxes are due for the different years, to the several funds, and in the respective amounts as so above stated.

"In witness whereof, I have hereunto set my hand, this day of December 24, 1902.

"H. W. KARRENBROCK, Collector."

It will serve no purpose to set forth the answer or reply. They may be summarized as carefully drawn pleadings, making certain charges and admissions, and were sufficient in form and substance to raise all issues presented on this appeal and to warrant the admission of all evidence introduced.

There is no dispute over the facts, summarized as follows:

Francis Whittaker died in June, 1871, testate—leaving a large estate and children—among them, Rebecka W., intermarried with one Briggs. Rebecka is the party referred to in the taxbill as "Rebecka W. Briggs." By item 5 of his will, Mr. Whittaker bequeathed and devised to Girard B. Allen and Robert K. Woods, of St. Louis county, and to the survivor of them and their successors, trustees, with full power to sell, convey, dispose of, invest and reinvest and generally to manage the same, one-fifth of all his estate in value after paying his debts (less an advancement) in trust for Rebecka, and with directions for paying the income of the trust property as pointed out in item 5 of the will for her benefit. At her death, leaving heirs of her body, they were to pay the principal sum to them and be discharged of the trust. In default of such heirs then living, they were to pay over and convey the same to the right heirs of Francis Whittaker. Allen

209 Sup—31

and Woods refused to act as trustees.    In December, 1871, by appropriate proceedings in the circuit court of St. Louis county, Oliver B. Filley and John Whittaker were made trustees in their place and stead. They qualified and acted until in April, 1875.    During that month by appropriate proceedings in the circuit court, Thomas T. Turner was appointed in their place and stead as trustee.    Thomas T. Turner is the "T. T. Turner" mentioned in the "Exhibit A," and he qualified and acted as trustee of the Briggs Trust Fund until the day of his death.    At the time of his death about $55,000 of the fund were in his actual custody. Some of the fund was in a certain bank on deposit, and the larger portion seems to have been in the actual custody and keeping of a certain real estate company —in what form or why we may only guess.    Turner died on the 30th of January, 1897.    He was a man of independent means, leaving a large and solvent estate, many heirs and a will.    By that will, defendant company was named as executor.    Presently, his will was probated and defendant qualified as executor and thence forward assumed the burden of administration. On taking charge, it found among his papers a portion of the Briggs Trust Fund, as said.    We do not understand that defendant charged itself in its inventory or appraisement with any of that fund, nor do we see in its settlements as executor that it so charged or credited itself.    What it did was this:    It preserved so much of the trust fund coming into its possession as executor, until such time as new trustees could be appointed under item five of the Whittaker will.    The record indicates, however, that in some way (not clearly disclosed) some of the trust securities in defendant's custody were cashed before the fund was disentangled from the Turner estate, proper, and turned over to new trustees.    In the April after the February in which defendant took charge of the Turner estate, Mrs.

Briggs commenced a proceeding in the proper circuit court, making the trust company as executor and others defendants, the object of which was the appointment of new trustees to succeed Turner in charge of the custody of the fund and an order requiring it to be turned over.    Such steps were taken in that proceeding as resulted on June 7, 1897, in the appointment of John C. Ropes and Roland W. Boyden (residents of Boston), as trustees, and authorized them to take charge of all the property constituting the trust estate and commanding defendant and others to turn it over. In pursuance of that order and appointment, the defendant on June 18th, 1897, turned over to Ropes and Boyden all the property in its hands belonging to said trust, save and except $10,000.    It seems the latter sum was retained temporarily in order to ascertain what was due Turner for services as trustee and to disentangle the trust estate from his own estate without loss to the latter.    Following that, on November 2, 1897, in accordance with a further order of the circuit court in that case, the defendant turned over said remainder of the trust fund, and received full acquittance, being discharged by the court by due order entered in the case from any liability as executor of Turner on account of the Briggs Trust Fund.    Defendant neither asked nor received any compensation for its temporary conservation of that portion of the trust fund so coming into its hands and turned over.    After turning it over to Ropes and Boyden, defendant administered the Turner estate, advertised notice of final settlement, made full distribution in accordance with the order of the probate court, and, on February 26, 1902, was finally discharged as executor and the estate was closed. Going back a little, it was shown in evidence that the taxes for 1897 were levied in the month of August in that year, six months after Turner's death, two months after Ropes and Boyden were appointed trustees and

at a time when the bulk of the trust estate had been turned over to them. The State of Missouri was not made a party to the proceedings in the circuit court, whereby Ropes and Boyden were made trustees, nor is it apparent how the sovereign State, without express provision of statute, could be sued. The order giving them the authority to receive and Turner's executor authority to turn over, was made at a time when the taxes for the year of 1897 were not demandable. During the five years Turner's estate was in administration the taxes in suit were never presented for allowance to the probate court. An attempt was made by plaintiff to show that on March 10, 1899, actual notice was given by postal card to defendant company of the existence of the unpaid taxes in suit. Because no timely notice was given defendant to produce such a card, its contents were not allowed to be put in by secondary evidence. On defendant's part there was uncontradicted testimony that it had no actual notice of the existence of those taxes. Plaintiff's theory is that defendant, as executor of Turner's will, must be held to have constructive notice of the contents of the tax records of St. Louis county where Turner resided. The point is subsidiary, and to it defendant well replies that the taxes were not assessed in Turner's name but in the name of *Rebecka W. Briggs*—"T. T. Turner, trustee," merely following her name possibly as a memorandum for the tax officials. It contends further and shows that it diligently sought out and paid all taxes assessed against the name of T. T. Turner, for 1897 and all years during the administration.

At the close of the evidence, plaintiff asked a mandatory instruction in its own behalf, which instruction the court refused to give and plaintiff saved exception. Having taken time to consider, the court found the issues in favor of defendant, adjudged costs against plaintiff and ordered execution to issue. Before judg-

ment was entered, plaintiff filed a "motion for judgment *non obstante veredicto*" in which for grounds it was stated that on the entire record the finding was erroneous and should have been for plaintiff, because the answer stated no defense and amounted to a confession of plaintiff's cause of action.   This motion being overruled, plaintiff excepted and after an unsuccessful motion for a new trial brings the case here for review without a motion in arrest.

On this record can the judgment stand?

I.   If the case be treated solely on broad lines of natural justice, it would seem put beyond question that the judgment was right; because:

If Turner had lived and paid the tax assessed against the Briggs trust estate, self-evidently he would have been entitled to have reimbursed himself out of that estate then in his hands.   He died after the property was assessed for taxes but before the taxes were levied.   His trusteeship died with him.   The defendant as executor of Turner's will came into actual possession of a part of the fund earmarked as a trust. Such trust property did not belong to Turner's estate, proper, and, hence, was properly left off the inventory, appraisement and settlements of his executor.   Nevertheless defendant had a legal duty to perform in relation to the fund so earmarked and coming into its hands.   What was that duty?   Obviously, as a kind of bailee, to preserve the fund intact for the true owner and to turn it over when trustees to hold it were appointed by competent authority under the fifth clause of the Whittaker will.   [2 Woerner's Law of Administration (2 Ed.), sec. 321.]   Obviously, too, the duty and power of executing the trust created by Francis Whittaker's will—the very right to administer the Briggs trust estate—did not continue a duty of Turner's estate or pass from Turner to defendant as the executor of Turner's will, but, as said, exclusively ves-

ted in trustees to be selected by proper authority; for we are taught in the hornbooks that trust powers like those donated to Turner as successor in trust to the original trustees (Allen and Woods), could not be delegated by him by will, even had he undertaken to delegate them: *Delegatus non potest delegare.* [1 Perry on Trusts (5 Ed.), sec. 287.] And whatever was the rule at common law, under our statutes the executor's executor no longer represents the executor's testator. [R. S. 1899, sec. 46; 2 Woerner's Law of Administration (2 Ed.), sec. 350.]

Again: Before these taxes were demandable the defendant was put in bonds and tied hand and foot by the decree of a court of competent jurisdiction—*i. e.,* it was bound by that decree to turn over every penny of the Briggs trust estate to Ropes and Boyden. It obeyed that order. It could do no more and no less. By obeying, it was stripped of the fund out of which it could reimburse the Turner estate, or itself, had it paid the taxes.

Again: While, as pointed out by plaintiff's counsel, the State may not be defeated in its right by the laches of its agents and officers, yet is it entirely without significance that no demand was made upon defendant for the payment of these taxes while it was yet in possession of any of the trust property? We do not say it had the personal duty to administer on the trust property, or voluntarily pay and dole it out on trust debts or taxes chargeable against it, but we do say this: It is plain that if it could be protected at all by way of reimbursement against the payment of these taxes, it would only be under equitable doctrines and out of the trust estate.

Moreover, no demand for the taxes in suit was presented to the probate court of St. Louis county for allowance against the Turner estate itself during the five years it was under administration. During all

those years, defendant seems to have been diligent in its duties as executor. All taxes of which it had notice, assessed and levied directly against the Turner estate, it sought out and paid. Its record as executor was under the scrutiny of the probate court and passed muster in its judgment of final discharge. Having been discharged and having now no property in its hands out of which it can recoup the payment of the taxes in question, it must needs pay out of its own pocket, if at all.

In the condition of things shown by the premises, a question arises, seemingly answering itself by the asking, viz.:

Suppose Turner had not died and a court of equity had removed him in June, 1897, and taken the trust estate from him before the taxes were either levied, or demandable, would he remain personally liable for them? If the law be reason, would such be good law? If not, how much less will the law hold his mere executor personally responsible under similar conditions?

A further question arises, a modification of the former and suggesting its own answer, viz.:

Shall the law be so written that, on the one hand, it takes away from the executor the identical trust fund that should primarily respond to the taxes in question, and then, on the other, makes him pay them out of his private funds? If it were to be so written it would be a hard saying much murmured against. The office of executor would have perils hitherto unheard of, and, therefore, the case at bar is not one that strongly appeals to a sense of justice in a court. To the contrary, it is a case that, if sustained at all, must be upon the strictest construction and nicest rigor of the written law alone, and that view of it we will now examine.

II. Plaintiff relies on sundry statutes, viz.: Section 184 of the Administration Act, section 9246 relat-

ing to Revenue, and chiefly on the State's lien created by sections 4259 and 4260 of the Revised Statutes of 1899. It is argued it was the duty of defendant as executor to pay the taxes in question without any demand being presented to it or to the probate court for allowance; that taxes are "debts" under section 4259 and 4260, *supra,* and that, all other means of collection failing, such taxes as "debts" due the State come within the purview of said sections 4259-60, creating a lien in favor of the State for certain classes of debts due it. It is argued, further, that in the absence of any statutory provision providing a remedy to enforce the State's right under the last two sections, a remedy may be found in the common law by ordinary suit. [State ex rel. v. Tittmann, 103 Mo. 553.] Appellant's learned counsel has prepared an uncommonly ingenious brief in support of the contentions thus briefly outlined.

The questions presented are related and overlap each other, therefore they may be considered as a whole.

(a)    Are taxes "debts" so as to fall under sections 4259-60, Revised Statutes 1899? Section 184 of the Administration Act relates to the classification of demands against estates in process of administration. By its first subdivision, funeral expenses are put in the first class; by its second, expenses of the last sickness, wages of servants and demands for medicine and medical attendance during the last sickness of the deceased are put in the second class; by its third, "all debts, including taxes due the State or any county or incorporated city or town" are put in the third class. Now, it is conceded by plaintiff that taxes due by decedent may be put in judgment by suit in the circuit court (State ex rel. v. Tittman, 103 Mo. 553), or allowed against the estate (R. S. 1899, sec. 9246), but it is pointed out that by subdivision 3 of section 184 it

is made the duty of an executor to pay such taxes without demand therefor being presented to the court for allowance, and this subdivision is relied on as a legislative definition of *taxes* as *debts*.    The fourth subdivision relates to judgments.    The fifth covers all demands without regard to quality which shall be legally exhibited against the estate within one year after the granting of the first letters on the estate, and the sixth and last covers all demands thus exhibited after the end of one and within two years of letters granted.

If we gave a controlling weight to the rule that one is known by the company he keeps, or that the thing itself is discoverable by what precedes and follows, known in the law as the doctrine of *noscitur a sociis*, it would force the conclusion that in the legislative mind when enacting section 184, *supra*, taxes were deemed debts—the language being, "all debts, including taxes due," etc.

But the dominant idea of that section is classification of demands against estates, not the definition of taxes or debts, and the third subdivision (unfortunately punctuated) is merely a direction that all debts due the State or any county or incorporated city or town, together with taxes due the one or the other, should be put in the third class of demands and paid accordingly.    If we give a strict construction to both the language and punctuation used in the third subdivision, it would read:   "All debts are put in the third class as well as taxes due the State or a county, city or town."    But this would be unsound exposition, because debts generally are otherwise classified in other subdivisions.

Section 9246, under the title of Revenue, comes nearer to a legislative utterance defining taxes as debts than does section 184 of the Administration Act. That section says:   "Said personal taxbill shall be presented and allowed against the estates of deceased or insol-

vent debtors, in the same manner and with like effect as other indebtedness of said debtors;'' but here again the legislative mind was directed to the method of collecting personal taxes—the remedy. It says they shall be presented and allowed against estates. How? The legislative anwer is: as debts are allowed—it points to the Administration Act for a remedy. The use of the phrase, ''As other indebtedness of said debtors,'' was intended to point the manner and effect of the allowance.

This court has more than once had occasion to define the word ''debt'' as used in the Attachment Act and in the Constitution. The word has also been under exposition in connection with the subject of taxation. In Carondelet to use v. Picot, 38 Mo. 1. c. 130, it was said: ''A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government upon its citizens or subjects, for the support of the State. It is not founded on contract or agreement. It operates *in invitum*. A debt is a sum of money due by certain and express agreement. It originates in, and is founded upon, contract, express or implied.''

The foregoing definitions of ''taxes'' and ''debts'' were adopted from Peirce v. Boston, 3 Metc. 520, and Camden v. Allen, 2 Dutcher 398, and are carried forward with approval in State ex rel. v. Snyder, 139 Mo. 1. c. 553, *et seq.*

On the other hand, courts in speaking of taxes have called them debts. It was so said in State ex rel. v. Tittmann, 119 Mo. 1. c. 667. They are related to debts. [Phelps v. Brumback, 107 Mo. App. *infra*.] Such was the logic of Greeley v. Provident Savings Bank, 98 Mo. 458. In that case it was held that a collector of taxes could intervene in an action appointing a receiver for an insolvent bank, where such receiver had in his hands sufficient assets to pay legal taxes, and enforce such

payment.  In that case, too, the right to enforce payment was referred to the statute creating the State's lien for debts due it from insolvent debtors.        [Secs. 4259 and 4260, *supra*.]

In this condition of the statutes and case-learning, we need not decide whether a tax is technically a debt or not.  It is sufficient for the case to say it has been determined that for the purpose of allowance and classification it may be treated as a debt, and it has been determined that taxes under the conditions present in Greeley v. Bank, *supra*, come within the purview of sections 4259 and 4260, and it is provided, section 9246, *supra*, they shall be allowed against the estate the same as other debts, that is, by the judgment of the proper probate court.

(b)   Do sections 4259 and 4260 govern this case? Plaintiff says, *yea;* but we think, *nay.*  Those sections were first enacted in the Laws of 1881, page 35. The caption of that Act may be looked to, and is:  "Assignments:   Priority of State's Lien:   An Act to secure to the State of Missouri a priority of lien in the case of *insolvent debtors* to the State."   By section 1 (now section 4259) it was provided that:

"Whenever any person indebted to the State of Missouri *is insolvent,* or whenever the estate of any deceased debtor in the hands of the executors or administrators *is insufficient to pay all the debts due from the deceased,* the debts due to the State of Missouri shall be first satisfied, and the priority hereby established shall extend as well to cases in which a debtor not having sufficient property to pay all his debts makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed: *Provided,* That nothing in this act contained shall be construed to interfere with the priority of the United States as se-

cured by law, or the payment of the expenses of the last sickness, wages of servants, demands for medicine and medical attendance during the last sickness of the deceased, nor funeral expenses.''

Section 2 (now section 4260) provides that: ''Every executor, administrator, assignee or other person who pays any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the State of Missouri from such person or estate, shall become answerable in his own person and estate for the debts so due to the State of Missouri, or for so much thereof as may remain due and unpaid.''

It is pointed out by defendant's counsel that the foregoing sections are substantially transcripts of very old Federal statutes, to-wit, sections 3466 and 3467 of the Revised Statutes of the United States, 1878, and were, therefore, presumably adopted by our Legislature in 1881 with the construction put upon them by Federal courts.   A comparison shows defendant's counsel is right in his contention that the Federal statutes and ours are equivalent.   It is apparent on its very face that section 4259, *supra,* relates to insolvent debtors. Under recognized canons of construction, it must be construed with section 4260 passed at the same time. They had but one common purpose, they struck at common mischief, and before either becomes applicable there should be a case of insolvency.   The steady holding of Federal courts in construing the parent Federal statutes is in accordance with this view.   [U. S. v. Fisher, 2 Cranch 358; U. S. v. Griswold, 8 Fed. 496; U. S. v. Hooe, 3 Cranch 72; U. S. v. Wood, 28 Fed. Cas. No. 16755, page 753; U. S. v. Couch, 25 Fed. Cas. No. 14874, page 674; Prince v. Bartlett, 8 Cranch 431; and in many other cases cited in counsel's brief.]

The emergency clause tacked to the Act of 1881, throws a flood of light on the legislative meaning and

sustains the gloss given above.   That emergency clause is as follows:

"Section 4.    Whereas, a doubt may be entertained by some as to the priority of the State in the *case of insolvent debtors,* and it is important that such question should be put at rest at once, an emergency exists within the meaning of the Constitution why this law should go into immediate operation, therefore this act shall take effect and be in force from and after its passage."

There is no insolvency in the case at bar, and therefore those particular sections of the statutes do not apply.

III.    The disposition made of the foregoing questions practically determines the case.   It may be conceded that the two-year limitation provided by the Administration Act for the allowance of demands does not control the sovereign State in allowing demands for taxes.   [State ex rel. v. Tittmann, 119 Mo. 1. c. 666.]   But it must also be conceded that where a right is created by statute and remedies are provided for enforcing that right those remedies are preclusive. [Phelps v. Brumback, 107 Mo. App. 1. c. 25; State ex rel. v. Snyder, 139 Mo. 1. c. 554, *et seq.,* and cases cited.] In this case plaintiff had its remedies but it sinned away its day of grace; for even if it be admitted (by way of argument) that the Turner estate itself was liable for the taxes of the Briggs Trust Fund for 1897— which we by no means hold—yet the executor having made final settlement it seems cannot be held personally liable.   [State ex rel. v. Kenrick, 159 Mo. 1. c. 634.]

Finally, in all the cases from Missouri courts relied upon by plaintiff's counsel the very estate, *subject to taxation, and actually taxed,* was in the hands of the executor, administrator or curator, *as such,* at the time the taxes were either assessed, levied or became due, and he had the wherewithal to pay them potentially in

hand and a resulting duty to pay arose; for example, State ex rel. v. Tittmann, 103 Mo. 533; State ex rel. v. Burr, 143 Mo. 209; Kansas City v. Simpson, 90 Mo. App. 50; State ex rel. v. Donaldson, 28 Mo. App. 190; and such view accords with the good sense of the thing.

It would seem that taxes, payable by the executor without allowance, were those directly levied against the property of decedent. [Langston v. Canterbury, 173 Mo. l. c. 135; State ex rel. v. Tittmann, *supra.*] Why should an executor be put to the hazard of personally and correctly settling the doubtful questions of law involved in paying taxes on a trust estate once held by his testator, but not held or administered by the executor? When he presents his voucher for a voluntary payment, the burden is cast upon him to show a payment demanded by law, or he fails in his credit. The law is not so unfair as to cast that hard duty on him in a case like this. It seems reasonable that the State should have set its right to recover at rest in one of the ways pointed out by the statute, if it wanted to hold the estate.

We think it can be safely asserted that no case can be found in the books in which a curator, an administrator or executor was personally held liable for taxes unless the property subject to the taxes and sufficient to pay them came into his hands in his official capacity *for the purpose of administration or curatorship.* Such is not the case at bar.

IV. Plaintiff says the judgment is erroneous because it assesses the costs against it. It puts its finger on a statute providing that costs shall not be so assessed. [R. S. 1899, sec. 9246, *supra.*] But the judgment should not be reversed on that account, for two very good reasons, viz.: (1) the trial court's attention was not called to it by the motion for a new trial, and (2) no motion in arrest was filed. We will modify the

judgment here and eliminate that feature.  [R. S. 1899, sec. 866.]

As modified, the judgment is affirmed.

All concur.