# IN THE MATTER OF THE ESTATE OF JOHN F. COLBURN, DECEASED.

## No. 1403.

RESERVED QUESTION FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. T. DeBOLT, JUDGE.

ARGUED OCTOBER 20, 1922.                DECIDED JANUARY 4, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

EXECUTORS AND ADMINISTRATORS—*priorities of debts—claim of Territory for taxes, penalties and interest.*

> The common law rule giving taxes due the crown priority over debts due the subject upon simple contract is not within the exceptions enumerated in section 1, R. L. 1915, and hence is law in Hawaii, and in the administration of an insolvent estate in probate a claim of the Territory against such estate for taxes should have preference over other claims against the estate of equal degree and should be paid in full with statutory penalties and interest.

OPINION OF THE COURT BY PETERS, C. J.

The following question was reserved to this court for determination: "In the administration of an insolvent estate in probate is a claim of the Territory of Hawaii against such estate for taxes to have preference over other claims against the estate and to be paid in full with such penalties and interest, or is such claim for taxes to be paid pro rata with other said claims?"

There is no statutory rule providing the order in which general unsecured claims against estates of deceased persons shall be paid by the legal representatives of the deceased. Section 2491, R. L. 1915, as amended by Act 38,

S. L. 1917, gives preference to an allowance made by the probate court for the maintenance and support of the family of a deceased person over all other charges except funeral charges and expenses of administration. Nor is there any express statutory provision reserving priority to the Territory upon public debts due. Section 1291, R. L. 1915, provides that every tax due upon property shall be a prior lien upon the property assessed to attach on January 31 in each assessment year and to continue for three years. No rights as a statutory lienor, however, are herein asserted by the Territory.

In the absence of statute reserving priority to the Territory in respect to taxes due it by a deceased delinquent taxpayer we must look to the common law of England declared by section 1, R. L. 1915, "to be the common law of the Territory of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the Territory of Hawaii, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage." In the cases of *Nathan* v. *Estate of Vida,* 1 Haw. 143, and *Notley* v. *Brown,* 16 Haw. 575, this court resorted to the common law to ascertain the rule there obtaining as to priority of claims against estates.

In the former case, before the enactment of section 1, R. L. 1915, this court refused to adopt the rule giving priority to judgments over simple contract debts, and in the latter, after the enactment of that section, followed the rule giving priority to expenses of administration over other debts of the deceased.

Under the common law of England debts owing to the crown of record or by specialty, after the payment of funeral expenses and costs of administration, had priority over all other debts of whatsoever nature. Debts owing to the crown upon simple contract also had priority over debts of the subject of equal degree.

"Of these the highest in its nature is the king's debt, and his prerogative to be preferred before other creditors arises from the regard the law hath to the public good beyond any private interest. * * *

"But the debts due to the crown, which are to have a precedency, must be understood of debts by matter of record; and therefore, sums of money due to the king upon wood sales, sales of tin, or other his minerals, for which no specialty is given, are not to be preferred to the subject's debt by matter of record.

"Off. of Exec. 138. (a) But, it seems, that if the king's debt, and likewise that of a subject, be both inferior to debts of record, the king shall be preferred. It hath been holden, that a debt upon simple contract to the king shall be paid before a debt by bond to a subject, although he was himself the administrator. Rex v. Burnett, Hil. 1681, Exch.; Law of Wills, 434."

4 Bac. Abr., title "Executors and Administrators," pp. 105-106, par. 2.

"Last in order of payment are debts on simple contract; as on bills or notes not under seal, and verbal promises, or such as are implied in law. Of debts of this nature, those due the king shall, it seems, be satisfied before debts due to the subjects" (citing 3 Bac. Abr. 80, Tit. Exors. L. 2).

2 Williams on Executors, p. 1090.

"But it seems, that if the king's debt, and likewise that of a subject, be both inferior to debts of record, the king shall be preferred."

2 Williams on Executors, pp. 1062, 1063.

Woerner, in his treatise on the American Law of Administration, Vol. 2, Sec. 364 (*p. 769), in giving the order in which debts were payable out of a decedent's estate at common law, concludes in respect to simple contract debts with the following language: "sixth: Simple contract debts, those due the crown taking precedence of those due any subject * * *."

Halsbury, in "The Laws of England," Vol. 14, p. 247, recognizes the prerogative right of the crown: "The right of the crown to be paid in priority to other creditors is a

prerogative right, and whenever the right of the crown and the right of a subject to the payment of a debt of equal degree come into competition the crown's right prevails." The same authority, in speaking of the law of England as it existed in 1869, upon the passage of the 32d and 33d of Victoria, ch. 46, by which priority of specialty over simple contract debts was removed, declared: "It is accordingly conceived that in the case of simple contract debts due to the crown, such debts will have priority over both specialty and simple contract debts due to a subject on the same principle as that on which a simple contract creditor who has obtained a judgment against the executor is entitled to priority over both specialty and simple contract creditors." While a statute of England enacted as late as 1869 is too recent to be regarded as part of the common law of England, Halsbury's statement of the law as amended by the statute is clearly authority for the deduction that prior to the statute, debts due the crown upon simple contract took priority over debts of the subject of equal degree.

Blackstone concedes priority to debts due the crown by record or specialty over every other debt (exclusive of funeral expenses and costs of administration) but is silent as to priority accorded debts due the crown upon simple contract over debts due the subject of the same degree. See Broom & Hadley's Blackstone, Vol. 1, *655.

In *State* v. *Bank of Maryland,* 6 Gill & J. (Md.) 205, 26 Am. Dec. 561, 570, the court said: "It is too late, therefore, at this day, to deny the state's right at common law to have its debt first paid out of the property of its debtor remaining in his hands, and no lien standing in the way. * * * The debt due from the bank to the state, is a debt on simple contract only, and not a lien, as is, and must be conceded. The state, therefore, having no lien on the property covered by the deed of trust, but a priority

only, in the payment of its claim, if that right of priority has not been lost, it is subject, claiming under the common law, to the same common law rule, applicable to the royal prerogative right of priority in England, of the same description."

In the case of *In re Niederstein*, 138 N. Y. S. 952, 954, the court said: "As early as the reign of Edward IV, the order of payment had been worked out as follows: 'Debts of record came first, then debts by specialty, and lastly other debts; and in any class of debts those owing to the king had priority'" (citing 3 Holdsworth's "History of English Law," p. 460).

Priority in the payment of public debts has been expressly reserved by acts of the Congress of the United States and by most of the several states. Those states which have failed to pass statutes reserving priority to the state for debts due it, have, under general statutes adopting the common law, invoked the common law prerogative of sovereignty as a basis of priority.

"This brings us to the inquiry, whether it is given by the third article of the declaration of rights made on the third of November, 1776, which declares 'that the inhabitants of Maryland are entitled to the common law of England, and the trial by jury, according to the course of that law, and to the benefit of such of the English statutes as existed at the time of their first emigration, etc., and also to all acts of assembly in force on the first of June, 1774, except such as have since expired, or have been or may be altered,' etc. * * * It is not our purpose to inquire into the origin of this royal prerogative right of preference in the payment of debts, as it formerly existed in England, or to trace it through its various statutory modifications. It is enough that it constitutes a branch of the common law of England, and that the common law has been adopted in this state by the general terms of the declaration of rights."

*State* v. *Bank of Maryland, supra,* 569.

"Thus when our Revised Statutes were enacted, the

common law rules, which by the expressed provision of our first constitution of 1777 had become a part of the law of this state, gave to the sovereign a right of payment of his claims against the estate of a decedent prior to that of any creditor whose claim was of the same class as that of the sovereign."

*In re Niederstein, supra,* 955.

"But whether it is of those prerogatives that necessarily enter into the political being of every state and so as much into ours as into that of England, or is of and created by the common law, it would seem to be of the law of Montana. The statutes of the latter provide that, where they declare the law, there is no common law. Otherwise, if not repugnant to, inconsistent, or in conflict with the Constitution or statutes of the state or United States, and if of a general nature and applicable, the common law of England is, and shall be, the law and rule of decision. Montana R. S. Secs. 3552, 8060. And so has been the law in Montana for more than 40 years. There is no statute in this state relating to the priority of public debts."

*American Bonding Co., etc.,* v. *Reynolds,* 203 Fed. (District Court, D. Montana) 356, 357.

Counsel for one of the general creditors urges that the prerogative right as it existed at common law is contrary to the genius of our institutions and should not be adopted and cites *State* v. *Harris,* 2 Bailey (S. C.) 598, where the court said at page 600: "It is said, however, to be incident to sovereignty, that the sovereign's debt must be first paid. This is true after the sovereign has so willed, and the reason why it is allowed in a monarchy may be that the king's interest and will must be identical. But in a republican government the will of the sovereign people is only to be ascertained by the acts of the legislature." Whether this objection is within the exceptions enumerated in section 1, R. L. 1915, we need not decide. If this prerogative of sovereignty be contrary to the genius of a republican form of government it seems inconceivable that both the Congress of the United States and the legisla-

tures of most of the states should pass acts reserving a priority to the government in respect to public debts. No doubt the South Carolina court was influenced by the fact that the claim of the state was predicated upon an obligation *ex contractu,* for it said: "It is true, there may be debts, which have a lien on property, such as taxes, which must be paid to the state in preference to all others. * * * Debts which are due to the state, as a sovereign, and for the protection of both the citizen and property, are entitled to a preference; but debts which arise *ex contractu,* and which are therefore due to her in her corporate capacity, or debts which arise *ex delicto,* and which are the punishment of the law for misdemeanors, cannot be entitled to any preference over the debts due to citizens."

In the instant case we are considering this identical situation: "Debts (taxes) due to the state (Territory) as a sovereign * * *."

Whether the Territory of Hawaii could successfully assert priority upon claims other than for taxes can be decided when the question arises. But as to the assertion of the prerogative right of priority in respect to public debts generally other courts of equal dignity do not seem to have the same apprehension as the South Carolina court.

In the case of *State* v. *Bank of Maryland, supra,* the court said: "This asserted priority has been denounced as an odious prerogative, springing up in the barbarous and tyrannical ages of the British government, and inconsistent with the genius of our people and the spirit of our institutions * * *. Notwithstanding all that has been said in disparagement of this right of priority, it has not been perceived to be inconsistent with the principles or spirit of our political institutions. It does not, indeed, exist here with all the incidents to the royal prerogative

right in England. We have not the writ of protection nor the extent in chief, or in aid. And the priority of the state is a rule only in the distribution of the property of a debtor, requiring the debt due to the state to be first paid, where the individual creditor has no antecedent lien over-reaching it. The government of the state is established for the good of the whole, and can only be supported by means of its revenue; which revenue the good of the whole requires to be protected. And as it can only act by its agents, who, no matter how vigilant, can not always be present to protect its rights, a priority in the payment of its debts (which must always be of a public nature) is necessary to enable it to accomplish the ends of its institution. It is not, therefore, opposed to a sense of right that the interests of all should prevail over that of an individual, when it can be asserted without disturbing vested rights; which diligent creditors can more readily acquire than the government through its agents. And the Congress of the United States, proceeding upon the like principle, and feeling the necessity for it, has in certain cases given a preference to debts due to the general government" (pp. 569, 570).

In *American Bonding Co., etc.,* v. *Reynolds, supra,* the court said: "They are dictated by expediency, necessity, and public policy. That here involved and like are justified, in that, where the rights and interests of all the people meet those of one of them, the former is of more importance and must prevail. The crown's priority over subjects in payment of debts is to secure and conserve the revenues—the life blood of the state, that the latter may be maintained in peace and war and its obligations discharged. It is of the incidental prerogatives and belongs to the king, not as an individual, but *parens patriae,* or as universal trustee for the people. It is, in fact, a reservation or exception to the general course of law in favor

of the public or for its good.  *  *  *  That. it is of a general nature and applicable to the state's institutions and consistent with the spirit thereof cannot be gainsaid" (pp. 357, 358).

The same general creditor also contends that the United States found it necessary to pass statutes reserving to it priority in case of public debts, which it need not have done had this incident of sovereignty existed.  The Congress of the United States has passed many statutes specifically dealing with priority of debts due it arising out of certain relations between the general government on the one hand and its officers and private individuals on the other.  There is no case, however, of which we are advised that holds that in the absence of an act of Congress the United States could not assert a prerogative priority against an insolvent estate in respect to a claim for taxes due it by the decedent.  Nor have we been advised of any decision that denies to the United States priority in the case of public debts, as such, due it.  There are manifold obvious reasons why the United States should have passed special acts upon this subject but we feel that they in the main, as also the statutes of the several states in respect to priority in the case of public debts, are merely declaratory of the common law.

"These statutes may be taken as approval of the principle of priority of public debts, as evidence of the rule's applicability, and as largely declaratory of inherent or common law." *American Bonding Co., etc., v. Reynolds, supra,* 358.

It is finally urged by the same creditor that the Territory, as such, cannot be considered in the same category as a state, that is, a "sovereign," within the meaning of that word as attached to the capacity of states.

This court accorded the Territory a prerogative of sovereignty in *Keola v. Parker,* 21 Haw. 597, 602, where it

held that the statute of limitations did not bar the Territory in an action to recover taxes. The question of the status of the Territory of Hawaii as a "sovereign" was also raised in the *Keola* case but the court found its definition to be unnecessary. No greater duty devolves upon us here. It is sufficient for the purpose of this case to say that the reasons for the allowance of the exception to the Territory in that case were no less potent than the acknowledgment to the Territory of the incidental rights of sovereignty in the matter of taxes due it in this case.

Taxes, while not a debt in the ordinary sense of the word and not a debt of record or by specialty *(Kimball v. Whitney,* 15 Ind. 280; *Tyler's Ex'rs. v. Winslow,* 15 Oh. St. 364, 366; *Burnes v. Simpson,* 9 Kans. 658, 664; *Keola v. Parker, supra),* may be considered as of the same dignity as a debt arising upon simple contract. In the case of *State, ex rel., v. Trust Co.,* 209 Mo. 472, the question arose as to whether or not a tax was a debt within the meaning of the statute classifying demands against estates in process of administration. At page 490 the court said: "This court has more than once had occasion to define the word 'debt' as used in the attachment act and in the Constitution * * *. A tax, in its essential characteristics, is not a debt, nor in the nature of a debt. A tax is an impost levied by authority of government upon its citizens or subjects, for the support of the state. It is not founded on contract or agreement. It operates *in invitum.* A debt is a sum of money due by certain and express agreement. It originates in, and is founded upon, contract, express or implied. * * * On the other hand, courts in speaking of taxes have called them 'debts.' * * * In this condition of the statutes and case-learning, we need not decide whether a tax is technically a debt or not. It is sufficient for the case to say it has been determined that for the purpose of allowance and classifica-

tion it may be treated as a debt, and it has been determined that taxes * * * shall be allowed against the estate the same as other debts * * *."

By the provisions of our statutes in respect to the enforcement of the payment of taxes prescribing the form of action for their collection as in assumpsit and allowing a personal judgment against the delinquent taxpayer it would appear by analogy that taxes are of the same dignity as debts and may be classified as such in interpreting the common law rule giving priority to debts due the crown. Such has been the interpretation of the English courts.

In the case of *In re Henley & Co.*, 9 L. R. (Ch. Div.) 469, 481, 482, motion was made for an order directed to the official liquidator of W. T. Henley & Co. to pay the receiver general of inland revenue a sum of money certain in satisfaction of certain property and income taxes due from the company in respect to lands held by the company, such payment to be made in priority to the other claims against the company. The court held, speaking through Lord Justice James: "Whenever the right of the crown and the right of a subject with respect to the payment of a debt of equal degree come into competition, the crown's right prevails. Whether, therefore, the debt is treated as a debt of record, or of specialty, or of simple contract, there being a right of priority in the crown, it is right that the debt should be paid." In a concurring opinion of Lord Justice Brett is found the following language: "But suppose we regard it merely as a simple contract debt; then in the administration of the assets of the company the crown comes into competition with the other simple contract creditors, and then the other prerogative, to which I have alluded, comes in, namely, that in competition with subjects the right of the crown must prevail." The *Henley* case is cited with approval in *New*

*South Wales Taxation Commissioners* v. *Palmer,* L. R. (1907) A. C. 179, 184, in which the crown claimed a right of preferential payment over all other creditors of the estate of a bankrupt in respect to moneys due the crown for land and income tax and fines.

The common law rule giving taxes due the crown priority over debts due the subject upon simple contract is not within the exceptions enumerated in section 1, R. L. 1915, and hence is law in Hawaii and applies in the instant case. Accordingly, in the administration of an insolvent estate in probate, a claim of the Territory of Hawaii against such estate for taxes should have preference over other claims against the estate of equal degree and should be paid in full with statutory penalties and interest.

*C. F. Clemons (Watson, Clemons & Hite* on the brief) for the trustee.

*H. R. Hewitt,* Deputy Attorney General (*A. L. C. Atkinson,* Deputy Attorney General, also on the brief), for the Territory.